[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 22, 2011
JOHN LEY
CLERK

No. 11-10779
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-02485-TCB

KHALID H. SYED,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 22, 2011)

Before MARCUS, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Khalid Syed appeals the district court's order affirming the Commissioner's

denial of his applications for Disabled Adult Child's ("DAC") Insurance Benefits,

Disability Benefits, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI"). On appeal, Syed argues that: (1) the Administrative Law Judge ("ALJ") did not apply the appropriate legal standard in assessing his mental limitations, as she failed to apply the Psychiatric Review Technique Form ("PRTF"); (2) the district court erred in not finding that the magistrate provided post hoc rationale for the ALJ's residual functioning capacity ("RFC") determination; (3) substantial medical evidence indicates greater limitations than those found by the ALJ; and (4) because the hypothetical question posed did not include any limitations regarding concentration or attention deficits, the testimony of the vocational expert ("VE") cannot provide substantial evidence to support a finding that he is not disabled. After careful review, we affirm.[1]

We review the Commissioner's decision for substantial evidence. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotations omitted).

---

[1] As an initial matter, we review the decision of the ALJ as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996) (noting that our review in a social security case is the same as that of the district court). Because we review the decision of the ALJ, we need not consider Syed's arguments with respect to the post hoc rationale in the magistrate's report and recommendation, or any other errors in the district court's opinion.

The Commissioner uses

a five-step, sequential evaluation process . . . to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on [the RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

Id. We do not re-weigh the evidence, decide facts anew, or make credibility determinations. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

At Step Two of the evaluation process, the ALJ must use a "special technique" dictated by the PRTF for evaluating mental impairments. Moore, 405 F.3d at 1213; 20 C.F.R. § 404.1520a-(a). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Moore, 405 F.3d at 1213; see 20 C.F.R. § 404.1520a-(c)(3-4). The ALJ must incorporate the results of this technique into the findings and conclusions. Moore, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a-(e)(2).

At Step Four of the evaluation process, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. See Phillips v.

3

Barhnhart, 357 F.3d 1232, 1238-39 (11th Cir. 2004).  RFC is an assessment, based upon all of the relevant evidence, of a claimant's ability to do work despite his impairment.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  In assessing RFC, the ALJ must state with particularity the weight given different medical opinions and the reasons for doing so.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

At Step Five of the evaluation process, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform.  Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  One manner of determining this is for the ALJ to ask a VE hypothetical questions "to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy."  Phillips, 357 F.3d at 1232.  In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments.  Winschel, 631 F.3d at 1180.  However, the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.  Crawford v. Comm'r of Soc. Sec., 363 F.3d

4

1155, 1161 (11th Cir. 2004). When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Winschel, 631 F.3d at 1180-81.

In this case, the ALJ addressed Syed's mental limitations in accordance with the PRTF. Following a discussion of the pertinent medical evidence and Syed's school records as they related to Syed's mental impairments, including discrediting Syed's higher Global Assessment Functioning ("GAF") scores because they were not generated by a physician or psychologist, the ALJ specifically addressed Syed's mental limitations pursuant to 20 C.F.R. § 404.1520a-(c)(3-4). The ALJ found the following mental limitations as set forth in the mental listings: "mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation." The ALJ incorporated these findings into the five-step, sequential evaluation process, during which the ALJ concluded that Syed was not disabled. Accordingly, the ALJ applied the appropriate legal standard in assessing Syed's mental limitations.

Moreover, substantial evidence supports the ALJ's determinations that Syed had the RFC to perform work at all exertion levels, limited to simple, unskilled work that was low-stress, requiring only the occasional need to make decisions, use judgment, or have contact with the general public. As the record shows, numerous medical reports indicated that Syed possessed adequate social skills, followed rules, related to co-workers, and that he was only moderately limited in his work capabilities. The medical evidence also reported that Syed engaged in behavior such as answering his cell phone during evaluations which could cost him any job.

Contrary to Syed's contention, the ALJ specifically noted Syed's difficulty with maintaining a schedule and keeping track of time. In addition, the ALJ sufficiently explained that greater weight was given to the vocational evaluation in arriving at Syed's RFC because it considered his functional deficits, evaluated his remaining abilities, and was consistent with the vocational and medical opinions of record. The ALJ also sufficiently explained that certain evaluating physicians were given less weight in their consideration because they only examined Syed once or twice. Thus, there was sufficient evidence to support the ALJ's RFC determination, as it properly detailed the severity of Syed's medically determinable impairments, his improvements when medicated and employed, as well as the various jobs for which he was qualified.

6

Finally, although the hypothetical question posed by the ALJ to the VE did not expressly include Syed's impairments, it implicitly accounted for them, and thus, was not improper. See Winschel, 631 F.3d at 1180-81. As the record shows, the hypothetical included that there were impairments, and that the individual would require a low-stress work environment. Indeed, the medical evidence demonstrated that Syed could engage in simple, routine tasks and unskilled work despite any limitations, as he was not significantly limited in his ability to complete simple work-like procedures. The medical evidence also showed that Syed understood and followed specific, multi-step instructions, and was cooperative and responsive. Thus, Syed was only moderately limited in his work capabilities, could accept instruction and criticism, and was not significantly limited in his ability to complete simple work-like procedures. Because simple, unskilled work sufficiently accounted for limitations in concentration, persistence, and pace, as set forth in Winschel, the hypothetical posed adequately accounted for Syed's limitations as they were implicitly included. Accordingly, we affirm the Commissioner's decision to deny Syed's claims for benefits.[2]

**AFFIRMED.**

---

[2] Moreover, Syed cites to no precedent, and we can find none, in support of his contention that a VE must answer only in a vacuum or that the ALJ must announce her RFC determination prior to posing the hypothetical question.