[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11198
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cv-00976-JBT

DANIEL PIERSON,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 31, 2012)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Daniel Pierson appeals the district court's order affirming the Commissioner

of Social Security's denial of his applications for a period of disability, disability insurance benefits, and supplemental security income. Mr. Pierson argues that the Administrative Law Judge failed to properly assess his credibility, failed to properly ascertain his Residual Functional Capacity ("RFC"), and posed an incomplete and insufficient hypothetical question to the vocational expert. The district court affirmed the ALJ's decision, concluding that the ALJ's findings were based on the appropriate legal standards and were supported by substantial evidence. We agree, and affirm.

**I**

Because we write only for the parties, we assume their familiarity with the underlying facts, and only summarize those necessary to resolve this case.

Mr. Pierson filed applications for a period of disability, disability insurance benefits, and supplemental security income. He alleged that he had become disabled on February 28, 2002, as a result of a back injury that he sustained in a motorcycle accident in 1993. After the Social Security Administration denied his applications initially and upon reconsideration, Mr. Pierson requested—and received—a hearing before an ALJ. On February 25, 2005, the ALJ issued a decision denying Mr. Pierson's applications. Subsequently, the Appeals Council denied his request for a review of the ALJ's decision. Mr. Pierson then challenged the ALJ's decision with the district court, which reversed and remanded the ALJ's decision. After remand, the

2

ALJ held two supplemental hearings, and then issued a decision on April 22, 2008, denying Mr. Pierson's applications. The Appeal's Council once again denied Mr. Pierson's request for review, and Mr. Pierson challenged the ALJ's decision with the district court. This time, however, the district court affirmed the ALJ's decision.

## II

"In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted). We review *de novo* the district court's decision about whether the ALJ's decision is supported by substantial evidence. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). We must examine the record as a whole, but we are not permitted to reweigh the evidence, make credibility determinations, or substitute our judgment for that of the Commissioner. *See id*.

## III

"An individual claiming Social Security disability benefits must prove that she is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The social

3

security regulations provide a five-step evaluation process that is used to determine whether a claimant is disabled. *See Winschel*, 631 F.3d at 1178.[1] "These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.

On appeal, Mr. Pierson argues that (1) the ALJ failed to properly assess his credibility, (2) the ALJ failed to properly ascertain his RFC, and (3) the ALJ failed to pose a complete and sufficient hypothetical question to the vocational expert. We address each of these issues in turn.

**A**

Mr. Pierson contends that the injury he sustained as a result of his motorcycle accident and the findings of Dr. Robert A. Greenberg and Dr. William E. Benet show that his pain has both physiological and psychological causes. As a result, Mr. Pierson continues, the ALJ should have found his testimony about his pain to be fully credible under our three-part pain standard.

We have provided a "pain standard" for when a claimant attempts to establish

---

[1] The steps are "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178.

his disability through his own testimony of pain or other subjective symptoms. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires that a claimant show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*. Because Mr. Pierson testified as to his subjective complaints of disabling pain, the ALJ was required to "clearly articulate explicit and adequate reasons for discrediting [Mr. Pierson's] allegations of completely disabling symptoms." *Id*. (internal quotation marks omitted).

The ALJ properly applied the pain standard in acknowledging that Mr. Pierson had provided evidence of an underlying medical condition, and that Mr. Pierson's medical conditions could reasonably be expected to produce the alleged pain. This, however, does not end the inquiry because "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered . . . in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). With regard to Mr. Pierson's testimony concerning the intensity, persistence, and limiting effects of his symptoms, the ALJ found Mr. Pierson to not be credible.

5

We conclude that the ALJ's credibility determination was supported by substantial evidence. The ALJ articulated several reasons for why Mr. Pierson's complaints of severe pain were not credible. First, the ALJ stated that Mr. Pierson's assertions were "far in excess of the medical evidence of record and other evidence, and are inconsistent with his reported activities of daily living." Specifically, the ALJ noted that Mr. Pierson demonstrated that he was capable of working because he had been driving a 70-mile paper route for approximately 6 hours a day, and that he continued to collect cans, recycle small appliances, and rummage through dumpsters looking for things he could fix and sell. Mr. Pierson also testified to being able to weed his front yard, do the laundry, cook, wash the dishes, take out the trash, do the groceries, attend to his personal needs, and drive daily. Second, Mr. Pierson testified that he was not taking any prescription medications. Finally, the ALJ stated that Mr. Pierson's credibility was brought into question by the fact that he had testified to extensive income and having been laid off from a welding job because of his limitations, but had reported no earnings.

We find that the ALJ's stated reasons for not finding Mr. Pierson's testimony—about the severity and persistence of his symptoms—credible constitute substantial evidence. Accordingly, we will not disturb the ALJ's credibility finding. *See id*. at 1562 ("A clearly articulated credibility finding with substantial supporting

6

evidence in the record will not be disturbed by a reviewing court.").

To the extent that Mr. Pierson argues that the ALJ erred in failing to rely on the opinions of Dr. Greenberg and Dr. Benet, we are not persuaded. "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179. "[G]ood cause" exists when "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). An ALJ may disregard a treating physician's opinion, but the ALJ must have good cause and clearly articulate the reasons for disregarding the opinion. *See id.*

Here, the ALJ explicitly found Dr. Greenberg's opinion—that Mr. Pierson's pain would markedly affect his ability to perform daily activities and complete a normal workday without interruptions for pain—to be of little probative weight because "it is unsupported by rationale or medical findings, and it is inconsistent with his initial opinion and contains no explanation for the inconsistencies," and "is also inconsistent with [Mr. Pierson's] demonstrated abilities to work as a newspaper deliverer, small recycler, and can collector." Because Dr. Greenberg's opinion was unsupported by medical evidence, *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3),

7

and inconsistent with the evidence, the ALJ had "good cause" to disregard Dr. Greenberg's opinion. *See Phillips*, 357 F.3d at 1241.

With regard to Dr. Benet, the ALJ noted that Dr. Benet reported that Mr. Pierson suffered from "mild limitations with his ability to interact appropriately with the public, supervisors, and co-workers, and moderate limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting." The ALJ afforded Dr. Benet's opinion considerable weight because the ALJ concluded that Mr. Pierson had "moderate difficulties" in social functioning. Contrary to Mr. Pierson's suggestion, however, Dr. Benet's opinion does not require a finding that Mr. Pierson's pain testimony was credible; Dr. Benet's opinion does not confirm the severity of Mr. Pierson's pain, but rather acknowledges that Mr. Pierson's pain may have both psychological and physiological causes and that Mr. Pierson has moderate difficulty with social functions. Accordingly, the ALJ's credibility determination was supported by substantial evidence.

## B

Mr. Pierson also argues that the ALJ failed to properly ascertain his mental RFC. In essence, Mr. Pierson contends that the ALJ erred in failing to obtain a Mental Residual Functional Capacity Assessment ("MRFCA"). "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations

require the ALJ to complete a [Psychiatric Review Technique Form] PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore*, 405 F.3d at 1214. It is undisputed that the ALJ incorporated the PRTF mode of analysis into his findings and conclusion, and translated the findings into work-related functions in determining Mr. Pierson's RFC. Additionally, Mr. Pierson has presented no authority, and we are aware of none, indicating that an ALJ must complete a separate MRFCA in addition to performing a PRTF.

Moreover, the ALJ also considered a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" ("MSS") completed by Dr. Benet, which is similar to a MRFCA. The ALJ relied on Dr. Benet's report—that Mr. Pierson suffered from "'mild' limitations with his ability to interact appropriately with the public, supervisors, and co-workers, and 'moderate' limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting"—in concluding that Mr. Pierson was restricted to "low stress simple tasks with only limited contact with the general public." As a result, we find no error in the ALJ's assessment of Mr. Pierson's mental RFC, and conclude that the ALJ's assessment was supported by substantial evidence.

## C

Finally, Mr. Pierson contends that the ALJ erred by asking the vocational

expert an incomplete and insufficient hypothetical. Mr. Pierson contends that the ALJ failed to pose a hypothetical question that included all of the limitations arising out of his physiological and psychological pain. Mr. Pierson, however, does not specify what additional limitations the ALJ should have included.

To the extent that Mr. Pierson argues that the ALJ failed to include his testimony about the severity and persistence of his symptoms, or the medical opinions of Dr. Greenberg and Dr. Benet, this argument is essentially a reiteration of his credibility argument. Because the ALJ did not find Mr. Pierson's testimony—about the severity and persistence of his symptoms—credible, and because the ALJ disregarded the opinion of Dr. Greenberg, he was not required to include those additional limitations in the hypothetical. *See Winschel*, 631 F.3d at 1180 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (internal quotation marks omitted); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) ("The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant. The characteristics that the [ALJ] omitted are among those that [the claimant] alleged to suffer but were either not supported by her medical records or were alleviated by medication.") (internal citation and quotation marks omitted); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

10

1155, 1161 (11th Cir. 2004) ("the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").

With regard to the opinion of Dr. Benet, as discussed above, the ALJ relied on Dr. Benet's opinion that Mr. Pierson had "mild limitations with his ability to interact appropriately with the public, supervisors, and co-workers, and moderate limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting." Having considered Dr. Benet's opinion, the ALJ concluded that Mr. Pierson had "moderate difficulties" in social functioning, and that he was restricted to "low stress simple tasks with only limited contact with the general public." Additionally, the ALJ's hypothetical to the vocational expert included his conclusion that Mr. Pierson was restricted to a low-stress work assignment with simple tasks, and limited contact with the public. Accordingly, we find that the ALJ did not pose an incomplete or improper hypothetical to the vocational expert.

## IV

The district court's order affirming the Commissioner's denial of Mr. Pierson's applications for a period of disability, disability insurance benefits, and supplemental security income is affirmed.

**AFFIRMED.**