[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16247
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-20845-PCH


MARIBEL LARA,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 21, 2017)

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Maribel Lara appeals the district court's order affirming the Commissioner of Social Security's decision denying her application for supplemental social security income benefits.  On appeal, Lara argues that the Commissioner improperly denied her benefits because the Administrate Law Judge ("ALJ") erred by failing to assign weight to the opinions of several treating physicians found in their notes; assigning less than controlling weight to the opinion of her treating psychiatrist; finding her statements about the intensity, persistence, and limiting effects of her symptoms not credible; and improperly evaluating the extent of her limitations for purposes of determining whether her mental impairments satisfied a listing and her residual functional capacity.  After careful consideration, we affirm the district court's judgment in favor of the Commissioner.

## I.     FACTUAL BACKGROUND

In July 2011, Lara applied for benefits on the basis that she was unable to work because of her bipolar disorder, high blood pressure, lupus, and arthritis. Although Lara originally claimed that the onset date of her disability was November 2010, she later amended the date to July 2011.  Lara requested and received a hearing before an ALJ.

2

**A.    The ALJ Hearing**

At the hearing, the ALJ heard testimony from Lara and also reviewed her medical records.[1]  Lara testified that she last worked as a caregiver but was unable to remember when she last worked or how long she had worked as a caregiver. Lara told the ALJ that she was unable to work because she was very depressed. She stated that because of her depression, she was unable to eat or bathe.  She described one instance when she stayed in her bed for 16 days, stating that she had difficulty waking up and wanted only to take pills.  Lara testified that her psychiatrist prescribed medication, which did not work.

Lara described her daily routine to the ALJ.  She stated that she had forgotten how to cook and was unable to clean.  She testified that all she wanted to do was sleep but was unable to answer how much time she slept each day.  She told the ALJ that she unable to watch television or drive.  She stated that her only hobby was spending time with her daughter.

Lara was unable to answer many of the ALJ's questions because she claimed she could not remember.  She could not remember whether she completed her

---

[1] The ALJ also heard testimony from a vocational expert whose testimony is not relevant to this appeal.

3

disability forms herself, the name of her treating doctor,[2] when she became a United States citizen, or the amount of food stamps she received each month.

In addition to Lara's testimony, the ALJ also reviewed a report of a statement Lara gave when she applied for benefits. At that time, Lara described her problems as primarily physical in nature. She reported that she was able to drive but recently had received multiple tickets for not paying attention to traffic rules. She stated that she was able to attend church, read, and watch television, and she reported having a few friends. She indicated that she cooked several times a week but needed assistance and was able to do laundry or wash dishes if she divided the tasks into stages. She also reported taking three hour naps due to fatigue and having problems concentrating because of her physical pain.

The ALJ also reviewed medical evidence regarding Lara's mental and physical impairments. The evidence about her mental condition included materials from psychiatrist Dr. Berta Guerra, who treated Lara from June 2010 through January 2013. Guerra diagnosed Lara with bipolar disorder not otherwise specified, psychotic disorder not otherwise specified, cognitive disorder, and generalized anxiety disorder. Guerra prescribed Lara medication and saw her once a month for medication management appointments.

---

[2] In contrast, when questioned by her attorney, Lara was able to identify her treating psychiatrist.

4

Guerra's notes from these appointments reflect that Lara regularly reported feeling better and less depressed and denied having mood swings or psychotic episodes.  Lara reported experiencing mild mood swings at only three appointments.  She also frequently stated to Guerra that she was sleeping well or that her insomnia was improving.  She described hearing voices at one appointment but otherwise denied experiencing hallucinations.  Guerra's notes do reflect that at times Lara was forgetful.

Guerra prepared two reports about Lara's mental impairments.  In a July 2011 Treating Source Mental Status Report, she opined that Lara was unable to work because of her depression, anxiety, psychosis, and mood swings.  She described Lara's recent memory and concentration as poor.  She also reported that Lara experienced auditory hallucinations daily.

In a February 2013 Medical Assessment of Ability to Do Work-Related Activities (Mental) form, Guerra opined about Lara's abilities to perform work-related activities on a daily basis in a regular work setting.  Guerra found that Lara had no ability to follow work rules, deal with the public, use judgment, deal with work stress, functional independently, maintain attention or concentration, carry out simple job instructions, behave in a stable manner, relate predictably in social situations, or demonstrate reliability.  Guerra explained that Lara had these limitations because she suffered from severe mood swings, paranoid delusions, and

5

anxiety, which left her unable to handle stress and caused her to decompensate easily. She also noted Lara's poor concentration and memory. She further indicated that Lara lacked the ability to manage her own benefits.

The record also included assessments of Lara's residual functional capacity from two consultative state agency examiners. After reviewing Lara's records, each examiner opined that Lara had limitations in her understanding and memory, concentration and persistence, social interaction, and adaptation. But ultimately each examiner concluded that Lara was no more than moderately limited in these areas.

Lara also submitted medical evidence regarding her physical condition, including evidence showing that she suffered from leukopenia, meaning she had a reduced number of white blood cells; gallstones; a fibroid tumor in her uterus; high blood pressure; back pain; and headaches.

The medical records showed that Lara suffered from chronic leukopenia. In September 2010, a treating physician, after noting the diagnosis, ordered additional testing including a bone marrow biopsy, which came back normal. In September 2011, Lara was treated by a hematologist who noted that she had a low level of white blood cells but concluded that her condition was benign and no treatment was needed.

The medical records also reflect that Lara suffered from gallstones.  In August 2011, she complained to her physician about abdominal pain and was diagnosed a few months later with cholelithiasis, meaning she had gallstones.  Based on this diagnosis and her ongoing intolerance to fatty foods, Lara's physician recommended surgery to remove her gallbladder.  It is unclear from the record whether she had this surgery.

Lara's medical records also show that she had a fibroid tumor in her uterus and ovarian cysts.  The ultrasounds showed that the tumor increased in size over time.

Lara was diagnosed with hypertension and went to the emergency room complaining of high blood pressure.  Examinations performed by multiple physicians and chest x-rays showed no other problems with her heart and lungs.

Lara complained to her medical providers of back pain.  X-rays of her spine showed degenerative changes.  Despite these degenerative changes, physical examinations revealed Lara had no spinal tenderness, reduced flexibility, spinal curvature, or joint abnormalities.  These examinations showed that she could tandem walk, walk on her heels and toes, and get in and out of a chair as well as on and off an examination table without difficulty.  Although her range of motion in her back was limited, she had a full range of motion in her other joints.

7

The medical records also reveal that Lara reported experiencing daily migraine headaches.  In September 2011, after she went to the emergency room complaining of headaches, a CT scan of her brain was normal.

## B.    The ALJ's Decision

After the hearing, the ALJ issued a written decision concluding, after applying the five-step sequential evaluation process, that Lara was not disabled. At the first step, the ALJ concluded that Lara had not engaged in substantial gainful activity since July 6, 2011, the amended application date.

At the second step, the ALJ concluded that Lara had the severe impairments of bipolar disorder not otherwise specified and generalized anxiety disorder.  The ALJ found that Lara's physical impairments were not severe.  Her gallstones and fibroid tumor were not severe impairments because she was receiving no ongoing treatment or medications for these conditions and claimed no functional limitations resulting from these conditions.  The ALJ also found that Lara's reduced white blood cell count was not a severe impairment because she alleged no functional limitations based on her reduced white blood cell count and her medical providers determined the condition needed no treatment.  Although Lara claimed she had been diagnosed with lupus, the ALJ found that she was receiving no ongoing treatment for this diagnosis.

8

The ALJ also discussed why Lara's other physical impairments were not severe. Her high blood pressure was not severe because examinations of her heart and lungs showed results within normal limits, her chest x-rays were unremarkable, the record documented no ongoing treatment for the condition, and she alleged no functional limitation based on this impairment. Although there was degenerative change in her spine, the ALJ found that this impairment was not severe because physical examinations reflected no spinal tenderness, reduced flexibility, spinal curvature, or evidence of bone or joint abnormalities. And the ALJ determined that Lara's headaches were not severe because the CT scan of her brain was normal.

At step three of the sequential analysis, the ALJ found that Lara did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Her mental impairments, considered singly and in combination, did not meet or equal the criteria of Listing 12.04, covering mood disorders, or Listing 12.06 covering anxiety disorder. The ALJ found the listings were not satisfied because Lara had only mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, and pace; and no episodes of decompensation of extended duration.

The ALJ then addressed Lara's residual functional capacity, finding that she was at a minimum able to perform medium work with certain limitations.  The ALJ explained that she should never climb ladders, ropes, or scaffolds; she should avoid working at unprotected heights with moving mechanical parts; and she should avoid operating motor vehicles.  The ALJ determined that she was able mentally to perform the basic demands of unskilled work but that she required only occasional co-worker contact and supervision with a set routine and few changes in the work day.  The ALJ found that she was able to maintain regular attendance, be punctual with customary tolerance, and perform activities within a schedule.

In assessing Lara's functional capacity, the ALJ found that although Lara's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects were not credible.  The ALJ set forth several reasons for this credibility determination.  First, Lara's description of her condition contradicted her psychiatrist's treatment notes.  Second, she reported working through July 2011 when she applied for disability, which indicated that her daily activities were greater than what she generally reported.  Third, she had made other inconsistent statements about her work history, proficiency in English, and ability to keep up with doctors' appointments.  The ALJ also noted that at the hearing Lara repeatedly stated she

10

could not remember the answers to the ALJ's questions, but she gave articulate answers to her attorney's questions.

After making this credibility determination, the ALJ concluded that the opinions of Guerra, Lara's treating psychiatrist, contained in the two reports were entitled to less than controlling weight.  The ALJ found Guerra's opinions were inconsistent with her notes and Lara's previous statements about the activities of daily living that she could perform.  The ALJ also gave some weight to the opinions of the state agency consulting psychologists even though they had not treated or examined Lara because their opinions were consistent with the evidence in the record.

In light of Lara's residual functional capacity, the ALJ concluded at step four that she was unable to perform her past relevant work, which included jobs as a caregiver or shampooer.  But the ALJ concluded at step five that there were a significant number of jobs in the national economy that Lara could perform, including laundry laborer, industrial cleaner, housekeeper, maid, and garment sorter.  Accordingly, the ALJ found that Lara was not disabled.[3]

---

[3] Lara requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request for review.  Lara raises no claim on appeal regarding the Appeals Council's denial of review.

## C.    District Court Proceedings

Lara then filed an action in federal district court, asking the court to reverse the Commissioner's decision.  Both Lara and the Commissioner filed cross motions for summary judgment.  The magistrate judge issued a report and recommendation that the district court affirm the Commissioner's decision, grant the Commissioner's summary judgment motion, and deny Lara's summary judgment motion.  Lara objected.  The district court overruled Lara's objections, adopted the magistrate judge's recommendation, and affirmed the Commissioner's decision.  This is Lara's appeal.

## II.    STANDARD OF REVIEW

When, as here, an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review the Commissioner's decision to determine whether it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Even if we find that the evidence preponderates against the [] decision, we must affirm if the decision is supported by substantial evidence."  *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*,

12

405 F.3d at 1211.  Our limited review precludes us from "deciding the facts anew, making credibility determinations, or re-weighing the evidence."  *Id.*

## III.   LEGAL ANALYSIS

A disabled individual may be eligible for social security income benefits. 42 U.S.C. § 1382(a)(1)-(2).  To determine whether a claimant is "disabled," an ALJ applies a sequential evaluation process to determine whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe and medically determinable impairment or combination of impairments; (3) has an impairment or combination of impairments that satisfies the criteria of a "listing"; (4) can perform her past relevant work in light of her residual functional capacity; and (5) can adjust to other work in light of her residual functional capacity, age, education, and work experience.  20 C.F.R. § 416.920(a)(4).

On appeal, Lara challenges the ALJ's application of the sequential evaluation process and conclusion that she was not disabled.   Lara argues that that the ALJ erred in reviewing the opinions of her medical providers and her testimony about her symptoms.  More specifically, she argues that the ALJ erred by failing to assign weight to the opinions of 10 treating physicians; failing to assign weight to opinions contained in the notes of Guerra, her treating psychiatrist, and assigning less than controlling weight to Guerra's opinions in two reports; and finding Lara's testimony about the intensity, persistence, and limiting effects of her symptoms not

13

credible.  Lara also argues that the ALJ erred in performing the sequential analysis by improperly assessing the severity of her mental impairments for purposes of determining whether the mental impairments satisfied the criteria of a listing at step three of the sequential evaluation and her residual functional capacity at steps four and five of the sequential evaluation.  We consider these arguments in turn.

## A.    The ALJ's Failure to Assign Weight to Medical Records from 10 of Lara's Treating Providers Does Not Warrant Reversal.

The ALJ failed to specify the weight she was assigning to medical records from 10 of Lara's providers.  Lara argues that these medical records contained opinions, the ALJ was required to assign weight to the opinions, and reversal is required for the ALJ to consider these opinions.  We disagree.  First, some of the records Lara identified do not contain opinions, meaning the ALJ was not required to assign weight to them.  Second, although other records contained opinions, any error was harmless and does not warrant reversal.

An ALJ must evaluate every medical opinion received and assign weight to each opinion.  20 C.F.R. § 416.927(c); *see Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  A medical opinion is a statement from an acceptable medical source that "reflect[s] judgment about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  A medical provider's treatment

14

notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Generally, a treating source's opinion is given "substantial or considerable weight unless good cause is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotation marks omitted). If the ALJ gives less than controlling weight to a treating source's opinions, the ALJ must clearly articulate the reasons for doing so. Good cause may exist when evidence does not bolster the source's opinions, the evidence supports a contrary finding, the opinion is conclusory, or the opinion is inconsistent with the source's own medical records. *Id.* Unless a treating source's opinion is given controlling weight, the ALJ must consider the following when assigning weight to an opinion: (1) whether the provider examined or treated the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant or the frequency of examination; (3) the amount of evidence and explanation supporting the provider's opinion; (4) the consistency of the opinion with the record as a whole; (5) the provider's specialization; and (6) other factors such as how familiar the provider is with other evidence in the claimant's case record. *See* 20 C.F.R. § 416.927(c).

In order to show that the ALJ erred, Lara must show that the medical records she identified contain opinions. But at least some of the records contain no

judgments about the nature and severity of her impairments and thus do not contain opinions.  For example, one record is a single sheet of paper that shows Dr. Adriana Hurtado referred Lara to a rheumatologist.  Because this record lacks any indication of Hurtado's judgment about the "nature and severity" of Lara's impairments, we cannot say that it qualifies as a medical opinion.  *Id.* § 416.927(a)(2).  The ALJ did not err by failing to assign weight to it.

To the extent that Lara has identified records from the providers that contain medical opinions, the ALJ erred by failing to state what weight she assigned to them.  But any such error was harmless.  *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (holding the ALJ's error in failing to assign weight to a medical provider's opinion was harmless); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012) (same); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (same).  The ALJ's decision reflects that she considered the treatment notes of these medical sources, and her decision was consistent with the records.  For example, Lara asserts that the ALJ failed to assign weight to the records from Dr. Tomas Braunschweig.  But Braunschweig's treatment notes show he determined that although Lara had a low-blood cell count, her leukopenia was benign and needed no treatment.  Because the ALJ's decision reflects that she considered these records and her decision was consistent with the records, we conclude that any error in failing to assign weight was harmless.

16

**B.    The ALJ Did Not Err in Weighing Guerra's Opinions.**

Lara also raises two challenges to the ALJ's review of the opinions of Guerra, her treating psychiatrist.  She argues that the ALJ erred by failing to assign weight to the opinions Guerra offered in her treatment notes and by failing to assign controlling weight to Guerra's opinions set forth in the Treating Source Mental Status Report and Mental Assessment of Ability to Do Work Related Activities.  We reject both challenges.

First, Lara is correct that the ALJ failed to identify the weight given to Guerra's treatment notes.  But as we explained above, the ALJ was required to assign weight to treatment notes only if they qualified as opinions, meaning they included judgments about the "nature and severity" of Lara's impairments. 20 C.F.R. § 416.927(a).  Lara has failed to show that any of Guerra's treatment notes set forth Guerra's judgments about the nature and severity of Lara's impairments.  Accordingly, we cannot say that the ALJ was required to assign weight to the notes.  But even if we assume that the treatment notes contained medical opinions, any error in failing to assign weight to the notes was harmless. The ALJ discussed Guerra's notes at length in her opinion, and her decision was consistent with the notes.

Second, Lara argues that the ALJ erred in assigning little weight to Guerra's opinions set forth in the Treating Source Mental Status Report and Mental

17

Assessment of Ability to Do Work Related Activities. But substantial evidence supports the ALJ's articulated reasons for assigning little weight to Guerra's opinions—that is, that the opinions were inconsistent with Guerra's treatment notes and other evidence in the record. For example, in one report, Guerra opined that Lara suffered from daily auditory hallucinations. But her treatment notes reflect that Lara repeatedly denied experiencing hallucinations and claimed to have experienced auditory hallucinations at only one appointment. And although Guerra opined that Lara was unable to work because of her severe mood swings, her treatment notes reflect that Lara repeatedly denied experiencing mood swings. On the few occasions that Lara reported mood swings, Guerra described them in her notes as mild. Given these inconsistencies between Guerra's opinions and her treatment notes, we conclude substantial evidence supports the ALJ's conclusion that there was good cause for assigning Guerra's opinions less than controlling weight.[4]

## C.    Substantial Evidence Supports the ALJ's Credibility Determination.

Lara also argues that the ALJ erred in finding her subjective complaints about the intensity, persistence, and limiting effects of her symptoms not credible.

---

[4] Because the ALJ had good cause for assigning less than controlling weigh to Guerra's opinions, we also reject Lara's argument that the ALJ erred in assigning some weight to the opinions of the state agency medical consultants about Lara's residual mental functional capacity. *See* 20 C.F.R. § 416.927(c) (recognizing that when a treating source opinion is not given controlling weight, an ALJ must weigh each medical opinion "[r]egardless of its source").

Lara testified before the ALJ about her mental impairments, claiming that her condition made her forgetful and that she was unable to leave her bed for weeks at a time unable to do anything other than sleep. She also testified that medication had not helped her psychiatric condition. Lara asserts that the ALJ erred in rejecting her statements about the intensity, persistence, and limiting effects of her symptoms, but we discern no error.

When a claimant attempts to establish a disability through her own testimony concerning her symptoms, we require "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [symptom]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptom]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1). In assessing such symptoms and their effects, the ALJ must consider: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than

19

medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 416.929(c)(3).[5] If the ALJ determines that the claimant's statements about her symptoms are not credible, the ALJ must "provide[] a detailed factual basis for [the] credibility determination," which must be supported by substantial evidence. *Moore*, 405 F.3d at 1212.

Here, substantial evidence supports the ALJ's determination that Lara's statements about her symptoms were not credible because those statements were inconsistent with the medical evidence in this case and because she had given inconsistent statements throughout the record. First, there was substantial evidence to support the ALJ's conclusion that Lara's statements were inconsistent with the medical evidence in the case. Lara testified that her depression left her unable to get out of bed for weeks at a time, medication had not helped, and all she wanted to do was sleep. But Guerra's notes tell a different story. These notes, covering more than two years of appointments, show that Lara's condition improved and that she reported feeling less depressed and sleeping better. Nothing in Guerra's notes reflect that Lara's depression left her unable to leave her bed for weeks at a time.

---

[5] Lara argues that it was inappropriate for the ALJ to state that she was reviewing Lara's "credibility." Lara relies on Social Security Rule 16-3p, in which the Commissioner eliminated the use of the term "credibility" to clarify that the "subjective symptom evaluation is not an examination of an individual's character." 81 Fed. Reg. 14166, 14166-67 (Mar. 16, 2016). But SSR 16-3p became effective in March 2016—after the ALJ's decision—and thus is inapplicable here. *See id.* (implementing SSR 16-3p); 81 Fed. Reg. 15776 (Mar. 28, 2016) (amending effective date to March 28, 2016).

20

The ALJ also concluded that Lara's testimony that she had memory problems was not credible because although Lara testified she was unable to keep up with her doctor's appointments, the record lacked evidence showing she was excessively tardy or missed appointments.  Lara argues that the record shows she had memory problems because it reflected that she repeatedly cancelled or missed appointments.  But all but one of the missed appointments to which Lara points occurred prior to the period when she claimed that she was disabled, when she was still working.  Given that Lara regularly received medical care during the time period when she claims to have been disabled and only missed one appointment, the record contradicts her testimony that she was unable to keep up with her doctors' appointments.  We therefore conclude that substantial evidence supports the ALJ's conclusion that Lara's statements about the intensity, persistence, and limiting effects of her symptoms were not credible.[6]

### D.    Substantial Evidence Supports the ALJ's Conclusion that Lara's Mental Impairments Did Not Meet or Equal a Listing.

Lara argues that the ALJ erred in assessing her mental condition for purposes of determining whether she suffered from a mental impairment under Listing 12.04, which covers mood disorders, or Listing 12.06, which covers

---

[6] Given the substantial evidence to support the ALJ's determination that Lara was not credible because her statements were inconsistent with her medical records and the record did not support her claims about her memory, we need not address whether substantial evidence supported the ALJ's other reasons for finding her not credible.

anxiety. An ALJ must use the special technique set forth in the regulations when determining whether a claimant's mental impairments are covered by a listing. *See* 20 C.F.R. § 416.920a(a), (d)(2), (e)(4),  Under the special technique, an ALJ must consider the degree of limitation a claimant experiences in activities of daily living; social functioning; and concentration, persistence, or pace, as well as whether the claimant had episodes of decompensation. *Id.* § 416.920a(c)(3).  Here, the ALJ found that Lara had mild limitations in her activities of daily living; moderate limitations in social functioning; moderate limitations in concentration, persistence, and pace; and no episodes of decompensation that were of extended duration. Because Lara's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ concluded that her impairments did not meet or medically equal either Listing 12.04 or Listing 12.06.

Lara argues the ALJ erred in finding that she had only mild restrictions in activities of daily living; moderate restrictions in social functioning; and moderate limitations in concentration, persistence, and pace.  But substantial evidence supports the ALJ's determinations.  With respect to activities of daily living, Lara reported when she applied for benefits that her problems were primarily physical and that she could go shopping, read, and attend church.  With respect to her social functioning, she stated that she had a few friends.  Regarding concentration,

22

persistence, and pace, medical records show that Lara had been observed to be alert and oriented to person, place, time and situation. In addition, she had regularly reported no mood swings or psychotic symptoms. Given this evidence, we cannot say that the ALJ erred in assessing her limitations or concluding that her mental impairments did not meet or equal a listing.

### E.    Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment.

Lara also argues that the ALJ erred in assessing her residual functional capacity at steps four and five of the sequential evaluation process. Lara asserts that the ALJ erred in assessing her residual functional capacity by failing to consider the limitations that were the result of her gallstones, a uterine fibroid tumor, low white blood cell counts, hypertension, and degenerative spine disease. But Lara has offered no explanation to the ALJ or to this Court about why or how these impairments created work-related limitations. And "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. Accordingly, we cannot say that the ALJ erred in assessing Lara's residual functional capacity.[7]

---

[7] Lara also challenges the ALJ's assessment of her mental impairments for purposes of assessing her residual functional capacity. We reject her arguments for the reasons given in Section III.D above.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the Commissioner's decision to deny benefits.

**AFFIRMED.**