[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11276
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-22114-RNS

MAGDALENA BORGES,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 26, 2019)

Before ROSENBAUM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Magdalena Borges appeals the district court's order affirming the final decision of the Social Security Commissioner ("Commissioner"), denying her application for period of disability, disability insurance benefits ("DIB"), 42 U.S.C. § 405(g), and supplemental security income benefits ("SSI"), 42 U.S.C. § 1383(c). On appeal, Borges argues that the Administrative Law Judge ("ALJ") gave improper weight to certain medical opinion evidence in the record and that the ALJ's assessment of her residual functional capacity ("RFC") is not supported by substantial evidence.

## I.

When the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the ALJ's decision for substantial evidence, but his application of legal principles *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is less than a preponderance and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id.* This Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Id.* The individual seeking benefits bears the burden of proving that he or she is disabled. *Id.*

When the ALJ reviews the medical evidence in a claimant's case, he is required to indicate the weight he assigned to the different medical opinions and

2

his reasons for assigning that specific weight. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The opinion of a treating physician must be given substantial or considerable weight unless good cause is shown not to do so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Id.* at 1241. If the ALJ refuses to give controlling weight to a treating physician's opinion, he or she must clearly articulate the reasons for doing so. *Id.* But we "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

While the opinions of Dr. Valor and Dr. Tauler, as Borges's treating physicians, would normally be given substantial weight, the ALJ here had good cause for not doing so. *See Phillips*, 357 F.3d at 1240-41. After reviewing Borges's medical records and other record evidence, the ALJ articulated several reasons for discounting the opinions of Drs. Valor and Tauler, including that those opinions were not supported by diagnostic findings or consistent with the record as a whole. Because the ALJ's rationale was adequate, this Court will not disturb the ALJ's credibility determinations.

3

Moreover, substantial evidence supports the ALJ' s evaluation of the medical opinions in the record. Dr. Valor's opinion of Borges's extremely limited physical capacity is not supported by her own treatment notes, is not supported by other medical evidence in the record, and does not appear to be supported by any diagnostic or clinical tests. In filling out the medical assessment, Dr. Valor did not describe any medical findings to support her assertions regarding Borges's lifting, carrying, postural, and physical limitations. And Dr. Valor's own treatment notes are inconsistent with this opinion—they indicate that Borges's musculoskeletal, neurological, and other faculties were intact from 2012 through 2015. Emergency room records from 2015 indicate that Borges had a normal range of motion, no neurological symptoms, and a "normal mood and affect." Further, there is no indication in the record that Borges is incapable of sitting, standing, or walking for more than one hour per day. Similarly unsupported is Dr. Valor's opinion that Borges should avoid contact with the public. These opinions are not only unsupported by any clinical findings appended to the medical  assessment or contained in Dr. Valor's own notes, but they are contradicted by the record evidence from Dr. Davidson's report that Borges stated she was capable of daily household tasks, such as cooking, cleaning, bathing, shopping, and driving. Thus, substantial evidence supports the ALJ's decision to give Dr. Valor's opinion

4

little weight.  As for the ALJ's decision to afford "some weight" to Dr. Valor's opinion with regard to Borges's limitations on grasping and fine manipulation, that determination was supported by the record and incorporated into the ALJ's RFC assessment, as described below.

Turning to Dr. Tauler, a review of the record evidence demonstrates that Dr. Tauler's opinion as to Borges's impaired mental state is an outlier.  Dr. Tauler is the only physician in the record who diagnosed Borges with psychosis.  This diagnosis is also directly at odds with Dr. Davidson's finding that there was "no evidence of delusions, hallucinations, or disordered thinking" and Dr. Glaccum-Gavagni's continued findings throughout the spring and summer of 2014 that Borges was not suffering from delusions or hallucinations.  Borges relies on Dr. Tauler's notes from their sessions as "clinically significant findings" supporting his opinion, but the ALJ correctly noted that Dr. Tauler's medical source statement did not rely on these notes or any other diagnostic findings in support and, moreover, these treatment notes were inconsistent with the weight of the other evidence.  For example, although Dr. Tauler opined in his medical assessment that Borges's ability to follow rules and maintain attention or concentration was "poor" and that she was incapable of functioning independently, Dr. Davidson, Dr. Glaccum-Gavagni, and Dr. Macksound all reported that her behavior was cooperative and her concentration, attention, and judgment were all fair to average.  Similarly,

5

while Dr. Tauler rated Borges "poor" for maintaining her personal appearance, relating predictably in social situations, and demonstrating reliability, the record shows that, at other appointments, Borges was well groomed, maintained appropriate eye contact, was fully oriented with normal affect, was calm and cooperative, and had "adequate" social skills.  Based on the foregoing, the ALJ's decision to discount Dr. Tauler's opinion was supported by substantial evidence.

As to the "great weight" accorded Dr. Davidson's opinion, Borges is correct that the opinions of one-time examiners are not entitled to deference.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician").  But failing to accord deference does not mean an ALJ must completely ignore such opinions.  He or she may consider them when they are supported by other evidence in the record. *See Crawford v. Comm 'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (affirming the ALJ's reliance on a consulting source's opinion that was more consistent with the record).  Here, the ALJ explained that he was giving Dr. Davidson's opinion "great weight" because it was well supported by the diagnostic findings detailed in the doctor's written report and because it was more consistent with the overall medical record.  There is substantial evidence in the record to support this conclusion, including Dr. Valor's continued normal findings during her mental-health examinations, Dr. Glaccum-

6

Gavagni's findings that Borges suffered from anxiety and a mood disorder but had otherwise normal mental-health markers, and Borges's ability to do things like attend to daily tasks, drive herself, and attend her various appointments with her doctors.

## II.

In evaluating both DIB and SSI claims, the ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). As part of this process, the ALJ analyzes whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe, medically determinable impairment or combination of impairments; (3) has an impairment, or combination thereof, that meets or equals the severity of a Listing; (4) can perform any of his past relevant work, in light of his RFC; and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. *See id.*

The regulations define RFC as that work "which an individual is still able to do despite limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine a claimant's RFC using all relevant medical and other evidence in the record. *Id.* However, the ALJ need not refer to every piece of evidence considered in his decision, so long as the decision is sufficient to allow us to conclude that the ALJ considered the

7

claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Here, the ALJ's assessment of Borges's RFC is supported by substantial evidence. After properly discounting the medical opinions of Dr. Valor and Dr. Tauler, the ALJ could still properly rely on Dr. Davidson's medical opinion, the non-opinion medical evidence in the record, and the other evidence, such as the hearing testimony of Borges and the VE, in formulating the RFC. *See* 20 C.F.R. § 404.1545 (a)( 1), (a)(3) (explaining that in determining eligibility for DIB benefits, the Administration will assess a claimant's RFC based on all relevant evidence in the record, including "relevant medical and other evidence"); 20 C.F.R, § 416.945(a)(1), (a)(3) (same for SSI benefits); *Phillips*, 357 F.3d at 1238. Thus, contrary to Borges's argument on appeal, there need not be medical opinion evidence contradicting the opinions of Drs. Valor, Macksound, and Azar, so long as the ALJ's RFC assessment is supported by any relevant evidence in the record. *See* 20 C.F.R. § 404.1 545(a)(3) (stating that in assessing RFC, "[w]e will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations. . . provided by you, your family, neighbors, friends, or other persons." (citation omitted)); 20 C.F.R. § 416.945(a)(3) (same); *see also Mullen v. Acting Comm'r of Soc. Sec.*, 723 F. App'x 970, 972

8

(11th Cir. 2018) (unpublished) (holding that an ALJ's RFC assessment may properly be based in part on non-opinion medical evidence).

Turning first to the mental aspect of the ALJ's RFC assessment—that Borges can understand and carry out simple instructions, make simple decisions, deal with routine changes, and is limited in her dealings with the public—this assessment is supported by substantial evidence in the record.  Namely, Dr. Davidson opined that Borges's depression and anxiety did not overwhelm her day-to-day life, and she could still perform activities like cooking twice a week, general cleaning and laundry once a week, talking to friends, and driving herself.  In Dr. Davidson's opinion, Borges could perform unskilled work, with the ability to understand and carry out simple instructions, make simple decisions, interact appropriately with others, and deal with mild to moderate stress.  This is consistent with Dr. Valor's treatment notes spanning three years, which showed continued normal mental-health findings.  It is also consistent with the findings of Dr. Glaccum-Gavagni that while Borges suffered from depression and anxiety, all of her other mental-health indicators were normal.

As to the physical aspects of the RFC assessment—the limitations on carrying, lifting, sitting, standing, walking, pushing and pulling and the limitation on "frequent" handling or fingering bilaterally—those are also supported by substantial record evidence.  While the record shows that Borges suffers from

9

obesity and that the hand specialists that Borges saw, Dr. Azar and Dr. Macksound, did uncover some evidence of carpal tunnel syndrome, this condition appeared to be mild and responding to conservative treatment.  The RFC accounts for these conditions, finding that Borges should be confined to "light exertional work" and that she could "frequently," as opposed to continuously, handle or finger bilaterally.  To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.  *See Moore*, 405 F.3d at 1213.  Furthermore, while the ALJ may not have referred to every piece of evidence that he used to formulate the RFC, his decision is nevertheless sufficient to allow this Court to conclude that the ALJ considered the claimant's medical condition as a whole and that substantial evidence supported his RFC assessment.  *See Dyer*, 395 F.3d at 1211.

As to the VE's testimony, an ALJ need not include findings in the hypothetical that the ALJ finds to be unsupported, *Crawford*, 363 F.3d at 1161.  Thus, the ALJ's three later hypotheticals—including the restriction of only occasional handling or fingering, the inability to sit, stand, or walk for more than one hour per day, and a person who could not deal with the public—all came directly from Dr. Valor's and Dr. Tauler's medical assessments, which the ALJ

properly discounted for the reasons given above.  Thus, the ALJ did not need to rely on the VE's testimony in response to these hypothetical questions.  *See Crawford,* 363 F.3d at 1161.  In other words, because Borges's RFC, which is supported by substantial evidence as explained herein, matched the ALJ's first hypothetical question at the hearing, he did not need to rely on these more restrictive hypotheticals.

Accordingly, we affirm the district court's decision.

**AFFIRMED.**