[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13562

Non-Argument Calendar

_____

JOHN PHILIP ROSS,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:20-cv-00012-RSB-CLR

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

John Philip Ross appeals the district court's decision affirming the denial of disability insurance benefits. Ross contends that the district court erred because the administrative law judge's assessment of his residual functional capacity neither considered his severe handgrip weakness nor identified an impairment limiting his ability to handle objects. After careful consideration, we affirm.

## I.    BACKGROUND

Ross first applied for disability benefits in April 2018, listing several medical impairments (degenerative disc disease, cervical impingement, lumbar impingement, osteoarthritis, plantar fasciitis, depression, paranoia, and anxiety). His application stated that he had become disabled in November 2015 while serving in the Army. Ross continued to serve, although performing modified duties on account of his injuries, until he was discharged in March 2017.

The particular issue on appeal concerns Ross's grip strength. During a January 2018 doctor's visit, Ross was evaluated as having a normal "5/5" strength rating in his upper extremities, although the doctor did note decreased sensation in the right extremity. In September, Ross had a "5/5" strength rating in all muscle groups except for his left grip, which had a "4+/5" rating. Despite these problems, Ross explained during a January 2019 psychological

evaluation that he could use household appliances and prepare full meals, make shopping trips to stores, and independently perform basic hygiene tasks. In February, Ross reported having trouble opening jars and continued to display a "weak grasp" as evidenced by a "4+/5" strength rating. He also reported pain and weakness in his deltoids and triceps as well as continued decreased sensation in his right extremity. In April, Ross's neurosurgeon observed that his problems with lack of sensation had "progressed to complete numbness in the medial aspects of his forearm[s] and [two] fingers bilaterally" and that he exhibited "severe hand grip weakness" as represented by a "4-/5" bilateral grip strength rating. In July, Ross reported that he had "difficulty [performing] routine tasks with his hands such as opening jars and [buttoning] shirts." Ross had spinal fusion surgery in August 2019. His discharge note explained that he should not lift more than fifteen to twenty pounds, push or pull more than ten pounds, or otherwise excessively strain himself. The note observed a strength rating of at least "4+/5" in all muscle groups.

At his hearing before a social security administrative law judge, Ross testified that parts of his arm and hand were so numb that he mainly performed tasks using only three fingers. This condition, he stated, caused him to have issues grasping and holding things and to often drop objects that he was holding. Ross claimed that he was only able to hold objects for fifteen to twenty minutes at a time, with smooth or heavy objects causing him particular trouble. He also claimed that before his surgery he was only able

to lift up to thirty pounds for short intervals, and that he was unsure of his ability to do even that after surgery. Despite these problems, Ross testified that he could move objects around so long as he planned his movements carefully. And although he could only hold objects for so long, he did not need to rest before grabbing them again, instead only needing to concentrate on grabbing them carefully and paying better attention. Finally, Ross testified that he could make trips to the grocery store and prepare microwave meals for himself, although he relied on friends and family to help with cooking and cleaning.

A vocational expert also testified at the hearing. In response to a hypothetical question from the administrative law judge, the expert stated that a person of Ross's age, education, and experience could perform jobs present in the national economy despite limitations on lifting, pushing and pulling, walking or standing, climbing, balancing, stooping, kneeling, crouching, crawling, overhead reaching, and using foot controls, so long as the hypothetical person could frequently handle, finger, or feel objects. The vocational expert came to the same conclusion when asked a second question about the hypothetical person described above, but subject to more severe limitations as to lifting, standing, and walking. When Ross altered the second hypothetical by adding a restriction on gripping, the vocational expert testified that the new limitation would preclude employment in all previously identified jobs.

After the hearing, the administrative law judge issued a written decision denying Ross's disability claim on the grounds that,

considering his age, education, experience, and residual functional capacity, Ross was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Ross exhausted his administrative remedies and sought judicial review of the denial in the United States District Court for the Southern District of Georgia. The district court adopted, over Ross's objection, a magistrate judge's report and recommendation concluding that the decision to deny Ross disability benefits was supported by substantial evidence. Ross timely appealed.

## II.    STANDARD OF REVIEW

We review an administrative law judge's decision for substantial evidence, and its application of legal principles *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is less than a preponderance, but [is] rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

## III.    DISCUSSION

As an initial matter, Ross's brief makes several arguments concerning the social security regulations and the administrative law judge's consideration of his spinal impairments for the first time on appeal. Because he did not present these arguments to the district court, we do not consider them. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)

Ross properly preserved his argument regarding handgrip weakness, but it fares no better. We begin with a brief explanation of the social security disability process as it relates to this appeal. To be eligible for disability benefits, a claimant must prove that he is disabled on or before the last date on which he was insured. *Moore*, 405 F.3d at 1211. The Administration uses a five-step evaluation method derived from a federal regulation to determine whether a claimant is disabled, and failure at any step precludes a finding of disability. *Id.*; 20 C.F.R. § 404.1520(a)(4). Here, only the fifth step, which considers a claimant's age, education, work experience, and residual functional capacity, is at issue. 20 C.F.R. §404.1520(a)(4)(v). A claimant is adjudicated not disabled at step five if he can make a successful adjustment to other work present in the national economy despite his limitations. *Id.*

The administrative law judge determined that Ross was not disabled because, considering his age, education, work experience, and residual functional capacity, he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Ross argues that this conclusion was flawed based on its residual functional capacity analysis, which he claims failed to discuss his "severe handgrip weakness" and assign him a resulting limitation with respect to "handling" objects, both before and after undergoing surgery. We disagree.

An administrative law judge's assessment of a claimant's residual functional capacity must consider "all [of the claimant's] impairments, severe and non-severe" alike, as well as the "claimant's

medical condition taken as a whole." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). Thus, a hypothetical question to a vocational expert can serve as substantial evidence to support a denial of disability benefits at step five only so long as it includes all of a claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1228 (11th Cir. 2002). But an administrative law judge need not include "each and every symptom of the claimant" in the hypothetical, *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or include alleged impairments that are properly rejected as unsupported by the record, *See Crawford*, 363 F.3d at 1160–1161.

Here, the administrative law judge's written decision found that Ross maintained a residual functional capacity to perform sedentary work with limitations as to lifting and carrying, pushing and pulling, standing and walking, climbing, balancing, stooping, kneeling, crouching, and crawling. It further found that Ross could occasionally reach overhead and use foot controls, and that he needed to avoid certain hazardous workplace environments, jobs that would entail many workplace changes, and jobs that would require extensive interactions with others. The decision expressly stated that "[i]n making this finding, [the administrative law judge] considered all [of Ross's] symptoms and the extent to which th[ose] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Beyond this general acknowledgment, the decision discussed Ross's spine problems and resulting limitations in detail, including his difficulties lifting things,

"severe handgrip weakness," and post-surgery discharge restrictions. It also cited the results of Ross's most recent physical examination, which reflected a normal strength rating in all muscle groups apart from his left grip, which had a "4+/5" rating. Finally, the decision explained that Ross could prepare meals and complete basic hygiene tasks, perform household chores, and shop in stores.

Ross claims that the administrative law judge never considered his severe handgrip weakness, either before or after surgery, when assessing his residual functional capacity. But the decision specifically discussed Ross's grip strength and his doctors' post-surgery discharge instructions; it simply concluded that he did not suffer from an impairment as to handling objects on account of his stated symptoms. The decision expressly stated that "[t]he nature of [Ross's] treatment, the findings made during the course of treatment, and [Ross's] statements about his daily activities d[id] not support a more restrictive finding" as to residual functional capacity. That conclusion was supported by Ross's own testimony that he could grasp light objects without intervening breaks so long as he was careful and focused, as well as other record evidence that he was able to shop, prepare meals, and perform both household chores and basic hygiene tasks.

The administrative law judge's decision not to include a "handling" impairment as part of Ross's residual functional capacity was explained in a written decision and supported by record evidence. Consequently, the vocational expert's testimony in response to a hypothetical question referencing the remaining

21-13562                Opinion of the Court                9

unchallenged impairments was sufficient to support a conclusion that Ross was not disabled. *See Wilson*, 284 F.3d at 1228; *Ingram*, 496 F.3d at 1270; *Crawford*, 363 F.3d at 1160–1161.

## IV.    CONCLUSION

For the foregoing reasons, the district court's decision is **AFFIRMED**.