[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
J.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 12, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-13176

_____

D. C. Docket No. 03-00205-CV-2-CAR-5

CHRISTI L. MOORE,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(April 12, 2005)**

Before BARKETT, HILL and FARRIS[*], Circuit Judges.

PER CURIAM:

   Christi L. Moore appeals the district court's order affirming the

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Commissioner of Social Security's ("Commissioner") denial of her application for

Disability Insurance Benefit ("DIB") and Supplemental Security Income ("SSI")

payments based on a determination that she retained sufficient residual functional

capacity to perform her past relevant work. Specifically, Moore takes issue with:

(i) the ALJ's failure to credit testimony from her treating physicians; (ii) the ALJ's

reference to an absence of objective medical evidence; (iii) the ALJ's ultimate

determination that she remained able to perform the full range of light work; and

(iv) the ALJ's failure to comply with regulations on the methodology for

evaluating mental impairments. We find the ALJ's failure to properly evaluate

Moore's psychological impairments requires remand.

## BACKGROUND

In February 1994, Moore applied for DIB, claiming disability from

fibromyalgia, separation of the right shoulder, a varus deformity of the knee and

leg[1], asthma, depression, cervical disc disease, and headaches. After hearings

before an administrative law judge ("ALJ"), her DIB application was denied in

August 1996. The district court affirmed, but on appeal before this court the Social

Security Administration ("SSA") requested a "sentence four" remand pursuant to

---

[1]A varus deformity is defined as a bowing inward of the knee and leg. F.A. Davis, Tarber's Cyclopedic Medical Dictionary 2064 (18th Ed. 1997).

42 U.S.C. § 405(g)[2] to allow further consideration of Moore's fibromyalgia. Moore subsequently filed her claim for SSI payments in April 1998. After additional hearings and the presentation of additional evidence, the ALJ recommended that both claims be denied. Though the ALJ accepted that Moore both had not engaged in substantial gainful activity and had impairments qualifying as severe, he determined that Moore's disabilities did not meet or equal any of those resulting in a presumption of disability. See Appendix 1, 20 C.F.R. § 404 (2005). The ALJ ultimately found that while Moore was restricted from some jobs, her impairments did not preclude performance of all of her past relevant work, including light exertion positions as an office clerk, sales clerk, food production worker, or waitress. That determination was largely grounded in what the ALJ perceived as an inconsistency between Moore's accounts of her daily activities and her claims of work impairment. The ALJ also made adverse credibility determinations as to Moore's claim that she has not kept up with her prescription drug and treatment regimen due to financial constraints, in light of Moore's ability to purchase cigarettes, cocaine, and marijuana. The ALJ further found Moore's case weakened by her smoking habit, where medical professionals

---

[2]In order to remand pursuant to the fourth sentence of § 405(g), the court "must either find that the decision is not supported by substantial evidence, or that the Commissioner (or the ALJ) incorrectly applied the law relevant to the disability claim." See Jackson v. Chater, 99 F.3d 1086, 1091-92 (11th Cir. 1996).

have repeatedly stated that it exacerbated her asthma and respiratory problems.

After the appeals council denied Moore's request for review, the Commissioner adopted the ALJ's findings as final. Moore appealed to the district court, which in turn adopted the magistrate's recommendation to affirm the Commissioner's decision. Moore timely appeals.

## STANDARD OF REVIEW

In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Id. This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

## DISCUSSION

An individual claiming Social Security disability benefits must prove that she is disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). For SSI claims, a claimant becomes eligible in the first month where she is both disabled

4

and has an SSI application on file. 20 C.F.R. § 416.202-03 (2005). For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because Moore's last insured date was December 31, 1997, her DIB appeal requires a showing of disability on or before that date. Conversely, as Moore applied for SSI payments in April 15, 1998, her SSI appeal requires a showing of disability between that date and the date of the ALJ's decision, on February 23, 2001.

The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims. McDaniel v. Bowen, 800 F.2d 1026, 1030-31 (11th Cir. 1986); 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work. Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir. 1985). Moore's appeal focuses on step four in the evaluation process: her capacity to perform her past relevant work.

First, Moore contends that the ALJ erred in failing to properly consider her symptoms of pain and fibromyalgia. Specifically, Moore contends that the ALJ's

decision improperly focused on the absence of objective findings to corroborate her claims of impairment, and conflicts with our unpublished decision in <u>Stewart v. Apfel</u>, No. 99-6132, 2000 U.S. App. LEXIS 33214 (11th Cir. Dec. 20, 2000).[3] In <u>Stewart</u>, we reviewed medical research on fibromyalgia, which often lacks medical or laboratory signs, and is generally diagnosed mostly on a individual's described symptoms. Because the impairment's hallmark is thus a lack of objective evidence, we reversed an ALJ's determination that a fibromyalgia claimant's testimony was incredible based on the lack of objective evidence documenting the impairment. <u>Id.</u> at *9, n.4.

While in this case the ALJ did note that Moore's *treating sources* documented a "lack of corroborative objective findings of impairment," this absence of laboratory evidence was not the basis for the ALJ's own negative credibility determination. Unlike the situation in <u>Stewart</u>, where the lack of objective findings formed the basis for the adverse credibility determination, the ALJ here relied on the inconsistencies between Moore's descriptions of her diverse daily activities and her claims of infirmity. More specifically, the ALJ questioned Moore's contentions that she could not maintain consciousness or perform light

_____

[3]Unpublished decisions of this court are not binding precedent. <u>See</u> 11th Cir. R. 36-2. However, Moore specifically relies on our unpublished decision in <u>Stewart</u>, and we address it for this reason.

work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework.

We recognize that credibility determinations are the province of the ALJ. Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984). As the ALJ provided a detailed factual basis for his credibility determination[4], which did not turn on the lack of objective evidence documenting fibromyalgia, Stewart is unavailing to Moore. Indeed, the ALJ even cited to our decision in Stewart, making clear that Moore's lack of corroborative medical evidence "did not establish the claimant has no impairment from fibromyalgia." R. 1182.

Second, Moore suggests that the ALJ improperly discredited the testimony of her treating chiropractor. Moore cites to decisions of this court requiring that the ALJ clearly articulate the reasons for giving less weight to the testimony of a treating physician. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). While a treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent, see Stewart, 2000 U.S. App. LEXIS 33214 at *9, the ALJ here adequately articulated specific justification for discounting Dr. Pardo's opinion. Dr. Pardo treated Moore for approximately six

---

[4]While Moore argues in passing that the ALJ's decsion runs afoul of this Circuit's precedent requiring explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony (e.g., Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)), the ALJ's findings and rationale satisfy this standard.

months before opining, in February 1997, that Moore was unable to work indefinitely. The ALJ found this opinion deficient because it failed to account for Moore's diverse daily activities, or to give any specific assessment of Moore's functional capacity or explanation of how it bore on Dr. Pardo's conclusion that Moore could not work. In addition, the ALJ discounted Dr. Pardo's opinion because the opinion was prepared on a short form used to support Moore's food stamp eligibility. Where our limited review precludes re-weighing the evidence anew, Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996), and as the ALJ articulated specific reasons for failing to give Dr. Pardo's opinion controlling weight, we find no reversible error.

Third, Moore urges error in the ALJ's ultimate determination that her residual functional capacity ("RFC") enabled her to perform some of her past work. On this point, the ALJ relied on medical testimony that Moore's varus orthopedic problem only "moderately restricted" her gait, did not restrict light duty employment, and could be treated with high-top shoes and over-the-counter medications. R. 1185. The ALJ drew on similar medical testimony that Moore's psychiatric and depressive impairments resulted in moderate deficiencies in concentration and attention, but did not affect Moore's mobility or require

8

hospitalization.[5]  R. 1184-85.  Likewise, Moore's vertebrogenic disorders resulted in no major functional loss.  R. 1183.  The ALJ further noted that throughout the time period under consideration, Moore's condition remained relatively stable, with a gain in weight, no diminution in muscle strength, a full range of motion, and normal muscle tone.  R. 1183, 1185.  While the ALJ's RFC decision considered Moore's subjective pain, it noted that Moore's medical history contained notations of embellished and magnified pain behaviors, as well as drug-seeking manipulative tendencies.  R. 1183, 1185.  The ALJ's RFC determination also drew on findings of an inconsistency between Moore's own testimony as to her daily activities and her claims of impairment.

Based on the foregoing, we find that the ALJ's determination that Moore retained sufficient RFC to perform some of her past relevant work was supported by substantial evidence.  See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) ("[e]ven if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence"); cf., Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (affirming ALJ determination that claimant's claims of work impairment could not be squared

_____

[5] On this point, the ALJ rejected a state agency's determination that Moore's affective disorder was "non-severe", finding instead that it imposed non-minimal restrictions on her capacity.  R. 1186.

with her ability to care for herself and manage daily activities of childcare and housework). To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination[6], her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against" the decision. Bloodsworth, 703 F.2d at 1239. Furthermore, we note that rather than pointing to medical evidence that conflicts with the ALJ's RFC determination, Moore argues inferentially that based on their evaluations, Moore's physicians *would most likely* disagree with the ALJ's findings. Because Moore bears the burden of demonstrating that she is unable to perform her past relevant work, see Jones, 190 F.3d at 1228, this sort of extrapolation and conjecture remains insufficient to disturb the ALJ's RFC determination, where it is supported by substantial evidence.

Fourth and finally, Moore argues that the ALJ erred in his consideration of her mental impairments. Specifically, Moore points to the ALJ's failure to

---

[6]To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work").

complete a Psychiatric Review Technique Form ("PRTF") or comply with the mode of analysis the form and its accompanying regulations dictate. Agency regulations require the ALJ to use the "special technique" dicated by the PRTF for evaluating mental impairments. 20 C.F.R. § 404.1520a-(a). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a-(c)(3-4). The ALJ is required to incorporate the results of this technique into the findings and conclusions. 20 C.F.R. § 404.1520a-(e)(2).

On appeal, the Commissioner concedes (as she must) that the ALJ erred in not completing the PRTF or complying with its mode of analysis. The Commissioner argues, however, that remand is unnecessary as it would require no more than the ALJ's rote completion of the PRTF. We cannot agree. The ALJ failed to even analyze or document Moore condition in two of the PRTF's functional areas: social functioning and prior episodes of decompensation. Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to Moore's RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless.

Furthermore, the fact that the ALJ complied with the PRTF method and

11

regulations when he first evaluated Moore's claim in 1996, prior to remand, is not sufficient to excuse his failure to do so here. Particularly where Moore has presented non-frivolous evidence suggesting that her mental condition has deteriorated since the vacated 1996 decision, the ALJ's prior evaluation is insufficient to deny Moore another evaluation of her mental impairments' effect on her RFC through the date of the ALJ's 2001 decision.

We thus join our sister circuits in holding that where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand. See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000) (Schroeder, C.J.) (where claimant presents colorable claim of mental impairment, ALJ's failure to comply with PRTF regulations requires remand); Stambaugh v. Sullivan, 929 F.2d 292, 296 (7th Cir. 1991) (ALJ's failure to evaluate claimant's alleged mental disorder or to document the procedure on a PRTF required reversal); Hill v. Sullivan, 924 F.2d 972, 975 (10th Cir. 1991) (same); Montgomerty v. Shalala, 30 F.3d 98, 100 (8th Cir. 1994) (reversing and remanding because ALJ purported to evaluate mental disorder, but failed to do so according to PRTF and its regulations).

The judgment of the district court is reversed and the case is remanded with instructions to remand the matter to the ALJ for an evaluation of Moore's mental impairments that complies with the applicable regulations.

**REVERSED AND REMANDED**.