[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14562

_____

D.C. Docket No. 0:17-cv-60910-KMM

MARCIA BONAVIA SAMUELS,

Plaintiff - Appellant,

versus

ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 13, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

MARTIN, Circuit Judge:

Marcia Bonavia Samuels appeals the District Court's order affirming the Commissioner of Social Security's (the "Commissioner") denial of her application for disability insurance benefits. Ms. Samuels applied for disability benefits based on her bipolar disorder. In this appeal, Ms. Samuels first claims the administrative law judge ("ALJ") erred at the fourth step of the disability analysis by failing to give her treating physician's opinion the proper weight and by discounting her own testimony. She also argues the ALJ erred at the fifth step of the analysis by relying on testimony from a vocational expert in response to a hypothetical question that omitted her impairments.

We vacate the judgment of the District Court and remand to the Commissioner for further proceedings. The ALJ did not have the benefit of our decision in Schink v. Comm'r of Soc. Sec., 935 F.3d 1245 (11th Cir. 2019) (per curiam), which may alter the fourth step of the ALJ's disability analysis. Additionally, we agree with Ms. Samuels that the ALJ's hypothetical to the vocational expert did not sufficiently communicate her limitations from bipolar disorder.

2

## I.    BACKGROUND

Ms. Samuels began receiving treatment for bipolar disorder in 2004.  Since that time, she has been prescribed a variety of medications that have changed over the course of her treatment.  Her medication "works reasonably," but she suffers side effects and deals with the up-and-down nature of her bipolar disorder.  These cycles include a constant feeling of depression combined with manic episodes characterized by symptoms of aggression, difficulty getting along with others, and insomnia.

Ms. Samuels has a bachelor's degree in biology as well as a Juris Doctor degree.  She worked as an attorney until 2009, when she attempted suicide.  Although she worked on some legal cases after her suicide attempt, she couldn't concentrate and was not paid for her work as an attorney after that date.  Ms. Samuels also lost interest in her hobbies, including gardening and talking to friends.  She stayed in bed, communicated only with her mother and children, and skipped showering; she had no appetite and lost weight; and had suicidal thoughts.  Indeed, to this day, and despite taking her medication, Ms. Samuels has daily suicidal thoughts.

Based on these symptoms from her bipolar disorder, Ms. Samuels applied for disability insurance benefits on December 24, 2012, with an onset date of January 1, 2008.  The Social Security Administration ("SSA") initially denied her

3

application.  On reconsideration, the SSA determined she was disabled beginning May 27, 2012 but not earlier.  Ms. Samuels then requested a hearing before an ALJ regarding her disability between January 1, 2008 and May 26, 2012.

Ms. Samuels and a vocational expert ("VE") appeared and testified at the hearing.  Ms. Samuels testified about living with her bipolar disorder as described above.  The ALJ also posed a few hypothetical questions to the VE regarding Ms. Samuels's functions and limitations.  The ALJ ultimately determined Ms. Samuels was not disabled between January 1, 2008 and December 31, 2013, the date she was last insured.  Specifically, the ALJ concluded that Ms. Samuels had the residual functional capacity ("RFC") to perform "medium work" and that she could understand, remember, and carry out short, simple work instructions and occasionally interact with the public.  Although the ALJ decided Ms. Samuels could not return to her past professions as either an attorney or a researcher because of bipolar disorder, the ALJ found she could engage in other types of employment.  As a result, Ms. Samuels was denied Social Security disability benefits.

The Appeals Council denied Ms. Samuels's request for review.  She filed a complaint in the U.S. District Court for the Southern District of Florida, alleging the Commissioner's decision was not supported by substantial evidence and was contrary to law.  The Commissioner denied Ms. Samuels's allegations and both

4

parties filed for summary judgment.  A magistrate judge recommended the District Court deny Ms. Samuels's motion and grant the Commissioner's motion for summary judgment.  Over Ms. Samuels's objections, the District Court adopted the magistrate judge's report and recommendation and granted the Commissioner's motion.  This is Ms. Samuels's timely appeal.

## II.    STANDARD OF REVIEW

When an ALJ denies benefits and the Appeals Council denies review, "we review the ALJ's decision as the Commissioner's final decision."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  "[W]e review de novo the legal principles upon which the Commissioner's decision is based."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  But we review the Commissioner's decision "only to determine whether it is supported by substantial evidence."  Id.  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id.  Our limited review does not allow us to "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  Id.  We also review de novo the judgment of the District Court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).

5

### III.    DISCUSSION

In making disability determinations, the Commissioner engages in a five-step process. See 20 C.F.R. § 404.1520(a)(4). A claimant applying for disability insurance benefits bears the burden of proving that she is disabled. See Doughty, 245 F.3d at 1278. At the first two steps, which are not at issue here, the claimant must show that she is not currently engaged in substantial gainful activity and that she has a severe impairment. See § 404.1520(a)(4)(i)–(ii). Third, also not at issue here, the claimant has the opportunity to show that the severity and duration of the impairment meets or equals the criteria contained in the Listing of Impairments. See id. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal those listed in the regulations, the Commissioner must determine her RFC before proceeding to the fourth step. Id. § 404.1520(a)(4) & (e). A claimant's RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also §§ 404.1520(e), 404.1545(a)(1) & (3)–(4).

At the fourth step, the ALJ considers the claimant's RFC and past relevant work to determine if she has an impairment that prevents her from performing her past relevant work. See id. § 404.1520(a)(4)(iv) & (e). As we said in Schink, the ALJ must consider the episodic nature of bipolar disorder. See 935 F.3d at 1267.

6

Evidence that the claimant "seemed to be doing better" during certain times does not support a finding that her impairment is not severe. Id.

Finally, if the claimant cannot perform her past work, the burden shifts to the Commissioner to show that there are jobs that the claimant can perform. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam); see also § 404.1520(a)(4)(v). If the Commissioner can show there are other jobs the claimant can perform, she is considered to be not disabled. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).

Ms. Samuels challenges three of the determinations the ALJ made related to the RFC findings. These determinations are associated with both steps four and five of the disability analysis. In particular, Ms. Samuels claims the ALJ erred at the fourth step by both failing to give her treating physicians' opinions the proper weight and by discounting her own testimony. Ms. Samuels says the ALJ erred at the fifth step by relying on VE testimony in response to a hypothetical question that omitted her impairments.

Ms. Samuels's step four arguments may have merit. But the Commissioner should have a chance to weigh the evidence in light of our directive in Schink. See 935 F.3d at 1267–68. We therefore remand for further consideration without expressing a view on the ultimate merits of Ms. Samuels's contention that the ALJ

should not have discounted her own opinion and those opinions of her treating physicians.

Ms. Samuels is clearly correct, though, that the hypothetical the ALJ posed to the VE was improper because it did not "accurately describe[] all the mental restrictions found for Ms. Samuels in the ALJ's decision." After finding that Ms. Samuels was not disabled at step four of the disability inquiry, the ALJ proceeded to step five. At that step, ALJs are required to "determine whether significant numbers of jobs exist in the national economy that the claimant can perform." Winschel, 631 F.3d at 1180 (citing, inter alia, 20 C.F.R. § 404.1520(a)(4)(v)). Where, as here, there are nonexertional limitations,[1] the ALJ "must introduce independent evidence, preferably through a vocational expert's testimony," of the existence of such jobs. Wolfe, 86 F.3d at 1077–78. In order for the VE's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Winschel, 631 F.3d at 1180 (quotation marks omitted).

Here, the ALJ introduced evidence that Ms. Samuels could perform other jobs through VE testimony. The ALJ asked the VE to assume: (1) Ms. Samuels's education and work experience; (2) that she had certain physical limitations

---

[1] Examples of nonexertional mental impairments include "difficulty maintaining attention or concentration" and "difficulty understanding or remembering detailed instructions." Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (quoting 20 C.F.R. § 404.1569a(c)(ii) & (iii)).

8

including, among others, a maximum weight to lift or carry and maximum time periods in which to sit and stand; (3) that she have "only occasional exposure" to unprotected heights and dangerous equipment; (4) that she "would be able to understand, remember and carry out short, simple work instruction"; and (5) that she "had only occasional interaction with the public." The VE stated that a claimant with those hypothetical limitations could perform certain jobs, like a linen room attendant or a dining room attendant. Based on this testimony, the ALJ concluded that Ms. Samuels "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."

While the ALJ need not list "every symptom of the claimant," the hypothetical must provide the VE with a complete picture of the claimant's RFC. See Ingram, 496 F.3d at 1270. That is to say the hypothetical must include the claimant's impairments or "otherwise implicitly account for these limitations." See Winschel, 631 F.3d at 1180–81. Here, it does not appear that the hypotheticals accounted for the episodic nature of bipolar disorder. See Schink, 935 F.3d at 1268.

At step two, the ALJ specifically found that Ms. Samuels's bipolar disorder was a "severe impairment[]" that "caused significant limitation in the claimant's ability to perform basic work activities." But in posing the hypothetical, the ALJ nowhere indicated that medical evidence suggested Ms. Samuels's ability to work

9

was affected by that impairment.  Nor did any of the hypothetical restrictions implicitly account for Ms. Samuels's mental limitations as reflected in the record.

In particular, the ALJ did not account for unexcused absences or time spent off-task, which were limitations caused by Ms. Samuels's bipolar disorder that were reflected in the record.  Dr. Flemenbaum opined that Ms. Samuels was "moderately limited" in her ability to complete a normal workweek.  The Commissioner's own expert found that Ms. Samuels's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was "markedly limited."  Asking the VE to assume that Ms. Samuels could carry out "simple work instruction" and had only "occasional interaction" with the public is not sufficient to communicate Samuels's limitations from her bipolar disorder.  Cf. Winschel, 631 F.3d at 1181 (reversing the denial of disability benefits because, at step two, ALJ determined impairments limited claimant "in maintaining concentration, persistence, and pace" but wholly failed to include such limitations in hypothetical).

Because the ALJ asked the VE a hypothetical question "that failed to include or otherwise implicitly account for" Ms. Samuels's impairments, the VE's testimony "is not 'substantial evidence' and cannot support the ALJ's conclusion" that Samuels "could perform significant numbers of jobs in the national economy."

See <u>Winschel</u>, 631 F.3d at 1181.  The Commissioner must address and resolve this issue on remand.

## IV.   CONCLUSION

Based on this record, and in accordance with our precedent, we **VACATE** the judgment of the District Court and **REMAND** to the Commissioner for further proceedings consistent with this opinion.  In particular, the Commissioner must account for the episodic nature of Ms. Samuels's bipolar disorder in determining her RFC and whether there are jobs in the national economy that Samuels can perform.