[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10253

Non-Argument Calendar

_____

CHARLES MICAUD,

Plaintiff-Appellant,

*versus*

ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-21736-CMA

_____

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Charles Micaud appeals the district court's affirmance of the Social Security Administration's denial of his claims for a period of disability and disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3). First, Micaud argues that the administrative law judge failed to classify his past relevant work as a composite job consisting of commercial photographer and photographer helper, which resulted in an inherently flawed finding. Second, Micaud argues that substantial evidence does not support the ALJ's residual functional capacity finding. After careful review, we affirm.

"When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotation marks omitted)). "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). But "we review the resulting decision only to determine whether it is supported by substantial evidence." *Id.* "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.* Thus,

we must affirm the ALJ's decision, even if the evidence may preponderate against it, so long as it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

Separate regulations govern eligibility for disability insurance benefits and supplemental security income. *Compare* 20 C.F.R. pt. 404 (disability insurance benefits), *with* 20 C.F.R. pt. 416 (supplemental security income). But "[t]he regulations for both programs are essentially the same." *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). In making disability determinations under 20 C.F.R. § 404.1520(a), the ALJ engages in a five-step process. *Samuels*, 959 F.3d at 1045. This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience. *Samuels*, 959 F.3d at 1045–46; 20 C.F.R. § 404.1520(a). A finding that the claimant is disabled or not disabled at any given step conclusively decides the matter, and the ALJ will not proceed to further steps. § 404.1520(a)(4).

In considering whether a claimant is able to return to his past relevant work, "the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her

impairments." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). "Although a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [ALJ] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). The ALJ may rely on the Dictionary of Occupational Titles and the testimony of a vocational expert in performing this analysis. 20 C.F.R. § 404.1560(b)(2).

The ALJ may consider past relevant work "either as the claimant actually performed it *or* as generally performed in the national economy." *Id.* (emphasis added). We have explained that "[t]he regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986).

Substantial evidence supports the ALJ's determination that Micaud was not disabled at step four. The vocational expert testified that Micaud's "job would be as a commercial photographer," which is a light-level job under the Dictionary of Occupational Titles. The vocational expert testified that Micaud actually performed that job at a medium level. Micaud had "no objections to that classification." The ALJ asked the vocational expert to answer a series of hypothetical questions about limitations that were supported by Micaud's evidence. Those limitations matched the ALJ's determination of Micaud's residual functional capacity. The vocational expert testified that the hypothetical individual could not perform Micaud's past relevant work as a commercial photographer as he had

performed it, but that the individual could perform the job as described in the Dictionary of Occupational Titles. The law requires only that the claimant can perform his past *kind* of work, not the specific job he used to hold. *Jackson*, 801 F.2d at 1293. The ALJ therefore reasonably relied on the vocational expert's testimony to conclude that Micaud "is able to perform" the job of a commercial photographer "as generally performed as described in the [Dictionary of Occupational Titles]."

Micaud argues that the ALJ failed to properly classify his past relevant work as a composite job as both a photographer and photographer helper. The Social Security Agency's Program Operations Manual System states that "[c]omposite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT." POMS DI 25005.020. It adds, "The claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." *Id.*

The Dictionary of Occupational Titles describes a "commercial photographer" as someone who "[s]elects and assembles equipment according to subject material [and] anticipated conditions" and "[a]rranges subject material, poses subject, or maneuvers into position to take [a] candid photo." DOT § 143.062-030. A commercial photographer "[m]ay make adjustments to camera, lens, or equipment . . . [m]ay design, build, arrange, or secure properties and settings to be used as background for subject material," and "[m]ay direct activities of other workers." *Id.*

The Dictionary of Occupational Titles provides that a "photographer helper" assists commercial photographers in taking and developing photographs. *Id.* § 976.667-010. For example, a photographer helper "[a]rranges lights and screens, sets up camera[s] at proper angle[s], and moves objects to secure desired background for photographs as directed." *Id.* The entry also states that photographer helpers perform other duties described in the general "helper" entry, which is defined as one "who assists another worker, usually of a higher level of competence or expertness, by performing a variety of duties, such as furnishing another worker with materials, tools, and supplies; cleaning work area, machines, and equipment; feeding or off bearing machines; holding materials or tools; and performing other routine duties." *Id.* § Master Titles and Definitions.

But Micaud developed no evidence that he held a composite job as both a photographer and a photographer helper. Micaud points to one document where he asserted that he lifted weights sometime during his career up to fifty pounds. But Micaud fails to connect that fact to any "significant elements" or "main duties" of working as a photographer helper. POMS DI 25005.020. All that lone fact establishes is that Micaud performed his job as a commercial photographer differently than it is performed in the national economy. But one discrepancy between a claimant's actual job duties and the description of that job as performed in the national economy does not necessarily mean that the claimant performs a composite job. Micaud bore the burden to establish that he

performed a composite job, and he failed to meet it. *See Schnorr*, 816 F.2d at 581.

Micaud also contends that the ALJ failed to fully and fairly develop the record. According to Micaud, the vocational expert did not discuss the composite job issue, which suggests that the vocational expert never considered it. Micaud also mentions that his attorney failed to identify the issue, and he asserts that both vocational experts and attorneys are "all too often unfamiliar with this nuanced aspect of classifying past relevant work." And Micaud argues that the ALJ should have taken notice of the issue "because a hearing before an ALJ is not an adversar[ial] proceeding."

Micaud relies on our decision in *Cowart v. Schweiker* in support of his argument, but that reliance is misplaced. 662 F.2d 731, 735 (11th Cir. 1981). In *Cowart*, a plaintiff applied for Social Security disability insurance benefits, and her claim was denied. *Id.* at 733. She received a hearing before an ALJ, and she proceeded *pro se*. *Id.* The ALJ concluded that the plaintiff did not qualify for disability benefits, and the district court affirmed that decision. *Id.* We reversed. *Id.* at 737. We held that "the ALJ has a basic obligation to develop a full and fair record," regardless of whether the plaintiff is represented by counsel. *Id.* at 735. We faulted the ALJ because he "failed to discharge his special duty to develop the facts in this case" and "made little or no effort to elicit evidence favorable to [the plaintiff's] claim." *Id.*

Unlike the plaintiff in *Cowart*, Micaud was represented by counsel before the ALJ. And the ALJ met his duty of developing a

full and fair record. Micaud produced medical records and descriptions of his past employment that together span nearly 1,000 pages. At the hearing, the ALJ asked Micaud several questions about his past work. The ALJ presented the vocational expert with a number of hypothetical questions regarding Micaud's limitations. The ALJ gave Micaud's counsel an opportunity to examine the vocational expert and Micaud. And Micaud's counsel offered no objection during the hearing. The ALJ committed no error.

Micaud also contends that substantial evidence does not support the ALJ's residual functional capacity finding. Residual functional capacity "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545(a). Residual functional capacity is the measure of an individual's "maximum remaining ability to do sustained work activities in an ordinary work setting on a *regular* and *continuing* basis," *i.e.,* for eight hours per day and five days per week or an equivalent schedule. SSR 96-8p (emphasis in original). And "the [residual functional capacity] assessment must include a discussion of the individual's abilities on that basis." *Id.*

The ALJ makes a residual-functional-capacity determination by considering the claimant's ability to perform exertional tasks as well as the claimant's mental abilities. 20 CFR § 404.1545(b), (c). The claimant's residual functional capacity is then used to determine his capability of performing various designated levels of work (sedentary, light, medium, heavy, or very heavy). *See id.*

§ 404.1567. The ALJ may consider activities of daily living when determining a claimant's residual functional capacity. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work or undermine the ALJ's determination in that regard, because the severity of a medically ascertained disability must be measured in terms of its effect on ability to work. *Moore*, 405 F.3d at 1213 n.6 (quotation marks omitted).

Micaud specifically contests the ALJ's assessment of his mental impairments. When evaluating mental impairments, the ALJ must use a special technique called the psychiatric review technique. 20 C.F.R. § 404.1520a(a); *Moore*, 405 F.3d at 1213. This technique requires rating how a claimant's mental impairments impact four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). The possible ratings are none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). If the limitations are classified as none or mild, the ALJ will conclude that the impairment is not severe. *Id.* § 404.1520a(d)(1). If the limitations fall into any of the other three categories, then the impairment is severe, and the ALJ will determine whether the impairment meets the severity of a listed mental disorder by rating the degree of functional limitation. *Id.* § 404.1520a(d)(2).

The ALJ must incorporate these results into the findings and conclusions. *Moore*, 405 F.3d at 1213–14; 20 C.F.R.

§ 404.1520a(e)(4). The ALJ also must show the significant history, including examination and laboratory findings, the functional limitations considered in reaching a conclusion about the severity of mental impairments, and a specific finding on the degree of limitation in each of the functional areas described above. 20 C.F.R. § 404.1520a(e)(4). We have held that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [psychiatric-review-technique form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore*, 405 F.3d at 1214.

Micaud argues that the ALJ did not properly perform the psychiatric review technique, but that argument misses the mark. The ALJ took "into consideration [Micaud's] alleged mental impairments." The ALJ found that "there is no evidence in the record that supports that [Micaud] experiences any functional limitations." To make that finding, the ALJ "considered the four broad functional areas set out in" section 404.1520a(c)(3). The ALJ concluded that, "[b]ased upon consideration of the record as a whole," Micaud experienced mild limitations in all four functional areas. Therefore, the ALJ performed the analysis that section 404.1520a requires and correctly determined that Micaud's level of impairment was not severe. *See* § 404.1520a(d)(1).

Next, Micaud contends that the ALJ did not properly consider his knee impairment before his date last insured. Micaud argues that there was ample evidence that his knee impairments

were well-established before his date last insured, which was December 31, 2016. But the vast majority of the record post-dated Micaud's date last insured. The ALJ found that the record established that in 2013 Micaud had "mild degenerative changes of the mid and lower thoracic spine" In early 2016, Micaud had a normal gait, no evidence of instability, a normal range of motion, normal strength, and a normal sensory examination except for the right lateral great toe. Also, Micaud's straight-leg-raising test was negative bilaterally, and Micaud had no paraspinal tenderness. In late 2016, Micaud sought treatment for medication management. At that time, an examination of Micaud's revealed no tenderness and a normal range of motion. Substantial evidence supports the ALJ's conclusion that Micaud did not prove that he had severe impairments before the end of 2016.

And to the extent that Micaud argues that the ALJ failed to fully and fairly develop the record on this issue because it failed to consider non-medical sources under Social Security Regulation 18-1p, that argument is unpersuasive. *See* 83 Fed. Reg. 49613-21. That provision applies only when a claimant "meet[s] the statutory definition of disability." *Id.* Because substantial evidence supports the ALJ's conclusion that Micaud did not meet that definition, that regulation is inapplicable.

We **AFFIRM**.