[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13317

Non-Argument Calendar

_____

ALEJANDRO RICARDO PATTERSON,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:23-cv-00024-JBT

_____

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Alejandro Ricardo Patterson challenges the district court's affirmance of the Social Security Administration's denial of his claim for supplemental social security income.  On appeal, Patterson argues that the administrative law judge erred by failing to include in her residual function capacity assessment both (1) social functioning limitations regarding coworkers and supervisors and (2) adaptation limitations.  After careful review, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Patterson applied for supplemental social security income on October 20, 2020, asserting disability as of that date.  After Patterson's claim was denied at the initial and reconsideration levels, the ALJ held a hearing to determine whether Patterson was disabled within the meaning of the Social Security Act.

In a written order, the ALJ considered the evidence in the record and testimony from the hearing.  The ALJ concluded Patterson's "autism spectrum disorder vs Asperger's syndrome with avoidant personality disorder" were "severe impairments" that "significantly limit[ed his] ability to perform basic work activities." And as for his other "determinable mental impairments"—"depressive disorder, anxiety disorder, and substance addiction disorder"— the ALJ concluded that they "do not cause more than minimal limitation in [his] ability to perform basic mental work activities and

are therefore [not severe]." As part of her severity determination, the ALJ found that Patterson had moderate limitations "interacting with others" and "adapting or managing" himself. Finally, the ALJ found that Patterson had

> the residual functional capacity to perform light work . . . with the following limitations: with no more than occasional climbing [of] ramps and stairs; no climbing of ladders, ropes and scaffolds; no exposure to dangerous machinery and unprotected heights; no more than simple routine repetitive tasks with a reasoning level that does not exceed 2; and no more than occasional interaction [with] the general public.

At the hearing, the ALJ asked a vocational expert if there would be work in the national economy for someone with Patterson's capacity. The vocational expert testified that someone with Patterson's limitations could hold several jobs, including routing clerk, electrical accessories assembler, and marker. The ALJ ultimately credited the vocational expert's testimony in concluding that Patterson wasn't disabled.

Patterson appealed to the Appeals Council, which denied review. After his appeal was denied, Patterson sued, seeking review in the district court. Patterson argued that the ALJ erred as a matter of law in denying his supplemental social security income application, asserting that the ALJ's decision wasn't supported by substantial evidence and seeking to have the ALJ's decision reversed. A magistrate judge heard the appeal with the parties' consent and concluded substantial evidence supported the ALJ's assessment of

Patterson's residual functional capacity and affirmed the ALJ's decision.  Patterson timely appealed.

## STANDARD OF REVIEW

"When an ALJ denies benefits and the Appeals Counsel denies review, we review the ALJ's decision as the Commissioner's final decision."  *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (internal quotation and citation omitted).  We review de novo the ALJ's conclusions of law.  *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024).  We will affirm the ALJ's decision if it is supported by substantial evidence.  *Id.* at 1268–69.  Evidence is substantial if "a reasonable person would accept [it] as adequate to support a conclusion."  *Id.* at 1269 (internal quotation and citation omitted).  Our review does not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  *Id.* (internal quotation and citation omitted).

## DISCUSSION

We must determine whether the ALJ erred by not including Patterson's moderate limitations in interacting with others and adapting himself in the residual functional capacity assessment.

The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled and, thus, entitled to supplemental social security income.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  This process sequentially analyzes whether the claimant:  (1) is unable to engage in substantial gainful activity;  (2) has a severe and medically determinable

impairment or combination of impairments; (3) has an impairment, or a combination of impairments, that meets or exceeds the severity of a specified impairment; (4) can perform past relevant work based on his residual functional capacity assessment; and (5) can make an adjustment to other work, in light of his capacity assessment, age, education, and work experience. *Id.*; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At steps two and three, the ALJ identifies the claimant's specific limitations in accordance with the psychiatric review technique. *Winschel*, F.3d at 1180. As part of the psychiatric review technique, the ALJ assesses a claimant's limitations, including his ability to "interact with others" and "adapt or manage" himself. *See* 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. pt. 404, subpt. P, app. 1. The ability to "interact with others" means the claimant has "the ability to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, app. 1. "Adapting or managing oneself" is the ability "to regulate emotions, control behavior, and maintain well-being in a work setting." *Id.*

At steps four and five, the ALJ uses the residual functional capacity assessment to evaluate whether any work is available for the claimant. *See* 20 C.F.R. §§ 416.920(a)(4)(iv)–(v). A claimant's capacity in this context is defined as the most a claimant can still do despite his limitations and is based on an evaluation of the relevant evidence in the record. *See id.* §§ 416.920(e), 416.945(a)(1) & (a)(3). Although the psychiatric review technique at steps two and three and the mental capacity assessment "are undeniably distinct,

nothing precludes the ALJ from considering the results of the former in [her] determination of the latter." *Winschel*, 631 F.3d at 1180 (cleaned up and citations omitted).

On appeal, Patterson argues that the ALJ erred: (1) by not including Patterson's ability to interact with coworkers and supervisors in her factual findings or in the residual functional capacity assessment; and (2) by failing to include adaptation limitations in the capacity assessment. We address each argument in turn.

*Coworker and Supervisor Interaction Limitations*

Patterson first argues that the ALJ erred because the residual functional capacity assessment did not properly reflect the ALJ's conclusion from the psychiatric review technique that Patterson had a moderate limitation interacting with others.

We first look to the ALJ's conclusions at steps two and three. Patterson contends that the ALJ was required to make specific factual findings as to his ability to interact with the general public, coworkers, and supervisors. The psychiatric review technique requires the ALJ to rate the degree of a claimant's limitation in "broad functional areas" including the ability to "interact with others." 20 C.F.R. § 416.920a(c)(3)–(4). That is what the ALJ did here. She found that Patterson had a limitation in his ability to "interact with others" and rated this limitation as "moderate." The regulations do not require that the ALJ make specific factual findings about each of the subcategories of "interactions with others" during this process. *See* 20 C.F.R. § 416.920a(c)(3)–(4). The ALJ did not err in

addressing Patterson's ability to interact with others without specifically listing each of the three subcategories.

Next, we review the ALJ's determination of Patterson's residual functional capacity at steps four and five. Patterson asserts that the ALJ's capacity assessment did not reflect his moderate limitation in interacting with others because it only addressed limiting his interactions with the general public and did not include any limitations regarding coworkers or supervisors. As we've already explained, the claimant's residual functional capacity is the most a claimant can still do despite his limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1) & (a)(3). When an ALJ determines at steps two and three that a claimant has a mental impairment, and the ALJ has not explained why that impairment does not affect the claimant's ability to work, the impairment must be accounted for in the residual functional capacity assessment and submitted as a hypothetical question to a vocational expert. *Winschel*, 631 F.3d at 1181. In posing this hypothetical question, the ALJ may implicitly account for a limitation in the claimant's residual functional capacity assessment. *Id.* at 1180–81.

That's what the ALJ did here. She accounted for Patterson's limitation in interacting with others by stating that he could have "no more than occasional interaction [with] the general public." While the ALJ only addressed one of the three subcategories in the regulation constituting "others," there is no requirement that the residual functional capacity assessment list work limitations that the claimant does not have. *See* 20 C.F.R. §§ 416.920(e),

416.945(a)(1) & (a)(3). By only including the limitation on interaction with the general public, the ALJ implicitly concluded that Patterson's moderate limitation in interacting with others only affected his ability to engage with the general public and not coworkers or supervisors.

Substantial evidence supported this implicit finding. One of Patterson's treating physicians, for example, found as part of his neurological exam that Patterson communicated and followed commands appropriately. And a second doctor specifically found that, while Patterson was moderately limited in his ability to interact appropriately with the general public, he was not significantly limited in his ability to get along with coworkers or peers. While there was other evidence that Patterson had more severe difficulties with social interaction, the ALJ was entitled to credit and weigh some medical opinions more than others. That's what she did and Patterson does not challenge her credibility findings and weighing.

*Adaptation Limitations*

Finally, Patterson argues that the ALJ failed to include any adaptation limitations in the residual functional capacity assessment, despite a finding in the psychiatric review technique that Patterson had a moderate limitation of adapting or managing himself. Again, we disagree.

The ability to adapt or manage oneself involves the skills of regulating emotions, controlling behavior, and maintaining well-being in a work setting. 20 C.F.R. pt. 404, subpt. P, app. 1. Here, the ALJ included in Patterson's capacity assessment a limitation of

23-13317                Opinion of the Court                9

"no more than simple routine repetitive tasks with a reasoning level that does not exceed 2."  This restriction implicitly accounted for Patterson's moderate limitation of adapting or managing himself by minimizing the amount of change to which Patterson would be required to adapt and by reducing the demands that could negatively impact his emotions or well-being.  *See Winschel*, 631 F.3d at 1180–81.

**AFFIRMED**.