**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-11655

Non-Argument Calendar

————————————

MARTA GONZALEZ CASTILLO,

*Plaintiff-Appellant,*

*versus*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-23917-CMA

————————————

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Marta Gonzalez Castillo challenges the district court's affirmance of the Social Security Administration's denial of her application for supplemental social security income. On appeal, she

argues that the administrative law judge erred in admitting and re-lying upon a Cooperative Disability Investigations Unit report and that the ALJ's findings as to her residual functional capacity were not supported by substantial evidence.  After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gonzalez Castillo applied for supplemental social security income on July 25, 2019.  She asserted disability as of June 27, 2017, and claimed a variety of physical and mental health impairments limited her ability to work.  She underwent several evaluations, including assessments by Dr. John J. Catano, Dr. Paul Feria, and Dr. Rosanna Perez.

Dr. Catano, for example, examined Gonzalez Castillo in September 2019.  He noted that Gonzalez Castillo "walked with an abnormal gait" and "ambulated with a wheelchair."  He stated that it was "medically necessary" for Gonzalez Castillo to use a wheel-chair "at that time."

In October 2019, the Cooperative Disability Investigation Unit conducted an investigation and prepared a report in Gonzalez Castillo's case.  The disability report, prepared by Vicky Quamina-Lee, described a video of Gonzalez Castillo shopping at a store. The video showed Gonzalez Castillo walking with a limp but with-out a walker or wheelchair, completing transactions, entering a four-digit PIN, carrying grocery bags, and interacting with store employees.  The disability report also detailed an interview of the store manager, who relayed that Gonzalez Castillo was a regular

customer who limped but did not use a cane or walker, usually came to the store alone, and had no difficulty shopping.

In August 2020, Dr. Feria conducted a mental status examination on Gonzalez Castillo. Dr. Feria described her as "emotionally withdrawn" with "a passive and lethargic adjustment." Dr. Feria noted that Gonzalez Castillo had poor focus and impoverished judgment. Dr. Feria diagnosed Gonzalez Castillo with schizoaffective disorder, depressive type.

The same month, Dr. Perez performed a physical examination of Gonzalez Castillo. Dr. Perez noted that Gonzalez Castillo had left hip and lower back pain, but that her strength and motor skills were normal. Dr. Perez found that Gonzalez Castillo's use of a walker was medically necessary.

After the commissioner denied Gonzalez Castillo's claim, both initially and upon reconsideration, the ALJ held a hearing to determine whether she was disabled within the meaning of the Social Security Act. At the hearing, Gonzalez Castillo admitted she did not use a walker except when going to the clinic. A vocational expert also testified, based on hypotheticals posed by the ALJ, that work would be present in the national economy for someone with Gonzalez Castillo's age, education, work experience, and residual functional capacity.

At the hearing, Gonzalez Castillo's attorney objected to the admission of the disability report into evidence, arguing that the report contained legal conclusions and "hearsay within . . . hearsay" that he "would like to cross-examine." The ALJ overruled the

objection and assured that she would rely on the disability report for its observations, not its legal or medical conclusions.

In a written order, the ALJ considered the evidence in the record and testimony from the hearing. The ALJ concluded that Gonzalez Castillo had "the following severe impairments: spine disorders, dysfunction-major joints, osteoarthrosis and allied disorders, depressive disorders, schizoaffective disorders, anxiety disorders, and obesity." But the ALJ also found that she had the residual functional capacity to conduct work in the national economy. Specifically, the ALJ determined that Gonzalez Castillo had

> the residual functional capacity to perform sedentary work . . . except [she] can occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. [She] can ha[ve] occasional exposure to hazards. She can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, within the scope of Reasoning Level 2. She could respond to demands and adapt to changes in a work setting. In addition, [she] could work at an appropriate and consistent pace. She can occasionally interact with supervisors, coworkers, and the general public.

In making this determination, the ALJ explained the evidence she relied upon. She found the disability report to be persuasive. She also concluded Dr. Perez's opinion was persuasive,

and referred to the findings regarding Gonzalez Castillo's strength and motor skills. By contrast, the ALJ found Dr. Catano's opinion "not persuasive" and Dr. Feria's opinion "less persuasive" Pointing to Gonzalez Castillo's hearing testimony, the ALJ determined that Dr. Catano's opinion that Gonzalez Castillo needed a wheelchair was "inconsistent with the record as a whole." She also found Dr. Feria's opinion "not consistent with the record as a whole." As evidence of the asserted inconsistency in both opinions, the ALJ pointed to the disability report. The ALJ ultimately credited the vocational expert's testimony in concluding that Gonzalez Castillo was not disabled.

Gonzalez Castillo appealed to the Appeals Council, which denied review. After her appeal was denied, she sued, seeking reversal of the ALJ's decision. Gonzalez Castillo argued that the ALJ committed reversible error by relying on the disability report to rebut medical opinions, and that the ALJ's residual functional capacity findings were not supported by substantial evidence. The district court concluded that the ALJ did not err in admitting and relying on the disability report and that substantial evidence supported the residual functional capacity finding. The district court entered final judgment in favor of the commissioner. Gonzalez Castillo timely appealed.

## STANDARD OF REVIEW

"When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the commissioner's final decision." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042,

1045 (11th Cir. 2020) (internal quotation and citation omitted). We review de novo the ALJ's conclusions of law. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024). We will affirm the ALJ's findings of fact if they are supported by substantial evidence. *Id.* at 1268–69. Evidence is substantial if "a reasonable person would accept [it] as adequate to support a conclusion." *Id.* at 1269 (internal quotation and citation omitted). Our review does not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence." *Id.* (internal quotation and citation omitted).

## DISCUSSION

On appeal, Gonzalez Castillo argues that (1) the ALJ erred in admitting, and relying on, the disability report, and (2) the residual functional capacity assessment was not supported by substantial evidence.

### *Admission of the Disability Report*

First, Gonzalez Castillo asserts that the ALJ erred by admitting, and relying on, the hearsay evidence in the disability report without adequately addressing her objections or determining whether the disability report was reliable. We disagree.

At a disability hearing, an ALJ may admit evidence even if that evidence would be "inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1). For example, hearsay evidence may be admitted, and may constitute substantial evidence, so long as the evidence has "underlying reliability and

probative value." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).  To determine whether hearsay evidence is reliable and probative, we look to four factors:  (1) whether "the out-of-court declarant was not biased and had no interest in the result of the case;" (2) whether "the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant;" (3) whether "the information was not inconsistent on its face;" and (4) whether "the information has been recognized by courts as inherently reliable." *J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1354 (11th Cir. 2000).

Here, the ALJ did not err in finding the disability report reliable and probative based on these factors.  As to the first factor, Gonzalez Castillo does not argue—and there is no indication that—the out-of-court declarants were biased.  Declarant Quamina-Lee, as an agent of the Social Security Administration, was acting in an adjudicative capacity in making the disability report.  *See Richardson*, 402 U.S. at 403.  We assume these reports are impartial.  *See id.* ("The vast workings of the social security administrative system make for reliability and impartiality in the consultant reports.").  Further, there is also no evidence that the store manager had any bias against Gonzalez Castillo or any interest in the outcome of the case.

The second factor also weighs in favor of admission.  Gonzalez Castillo had access to the disability report before the hearing and could have subpoenaed the declarants.  Gonzalez Castillo asserts that she was not provided with a copy of the disability report

until October 2020 and was not given the opportunity to rebut its findings. While she objected to the admission of the disability report and requested to cross-examine the declarants, she did not explain why she could not subpoena the declarants during the approximately three-month period prior to the hearing in January 2021. Thus, Gonzalez Castillo "obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant[s]."[1] *J.A.M. Builders, Inc.*, 233 F.3d at 1354.

The third factor—consistency—weighs in favor of the admission of the disability report as well. Gonzalez Castillo argues that the report is inconsistent for three reasons. First, she asserts that the author of the report is unclear because Quamina-Lee made the observations and conclusions in the disability report, but two different people submitted and approved it. Second, Gonzalez Castillo points out that the disability report refers to a different date and claimant in one section. This appears to be a minor clerical error because every other section of the disability report uses Gonzalez Castillo's name and information. Third, she contends that the disability report's suggestion that a naturalized citizen would be required to speak English is false. But none of these errors show

---

[1] To the extent Gonzalez Castillo asserts that her inability to cross-examine the declarants constitutes a procedural due process violation, this argument also fails. She was given the opportunity to subpoena the declarants in the disability report, but did not seize that opportunity. *See Richardson*, 402 U.S. at 404 ("Although the claimant complains of the lack of opportunity to cross-examine the reporting physicians, he did not take advantage of the opportunity afforded to him . . . to request subpoenas for the physicians.").

that the information contained within the report—and relied upon by the ALJ—was inconsistent on its face.

Finally, the fourth factor—whether the information is recognized as inherently reliable—weighs in favor of admission. When the Social Security Administration is operating in an adjudicative capacity, we typically find its reports are reliable. *Richardson*, 402 U.S. at 403.

Additionally, Gonzalez Castillo contends that the ALJ erroneously relied on the disability report to discredit the medical opinions of Dr. Catano and Dr. Feria. But for disability claims filed on or after March 27, 2017, the ALJ examines "all of the relevant medical *and other evidence*," 20 C.F.R. § 404.1545(a)(3) (emphasis added), and need "not defer or give any specific evidentiary weight" to "any medical opinion[]." *Id.* § 404.1520c(a). Consistent with the new regulations, the ALJ considered multiple sources of evidence—including the disability report and Gonzalez Castillo's own testimony—to discount Dr. Catano's and Dr. Feria's opinions.

Thus, the ALJ did not err in admitting, and relying on, the disability report.

*The Residual Functional Capacity Findings*

Second, Gonzalez Castillo argues that the ALJ's residual functional capacity finding was not supported by substantial evidence. Again, we disagree.

The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled under the Social Security

Act. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). This process sequentially analyzes whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically determinable impairment or combination of impairments; (3) has an impairment, or a combination of impairments, that meets or exceeds the severity of a specified impairment; (4) can perform past relevant work based on her residual functional capacity assessment; and (5) can make an adjustment to other work, in light of her residual functional capacity assessment, age, education, and work experience. *Id.*; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At steps four and five, the ALJ uses the residual functional capacity assessment to evaluate whether any work is available for the claimant. *See* 20 C.F.R. §§ 416.920(a)(4)(iv)–(v). A claimant's residual functional capacity in this context is defined as the most a claimant can still do despite her limitations and is based on an evaluation of all the relevant evidence in the record. *See id.* §§ 416.920(e), 416.945(a)(1) & (a)(3).

Gonzalez Castillo challenges the ALJ's finding that she had the residual functional capacity to perform sedentary work with minimal mental and physical limitations. For her mental impairments, Gonzalez Castillo argues that the ALJ failed to account for her mental functioning limitations over the entire relevant period. But the ALJ recounted in detail Gonzalez Castillo's mental health treatment and improvement with medication. Although Gonzalez Castillo points to inpatient psychiatric treatment and other evidence from before her claimed disability date, the ALJ correctly noted that she never underwent psychiatric hospitalization or

inpatient treatment during the relevant period. Gonzalez Castillo's argument essentially amounts to an improper request to reweigh the evidence, which we decline. *See Winschel*, 631 F.3d at 1178.

For her physical limitations, Gonzalez Castillo contends that the ALJ erred in not including her need for an assistive walking device. She points to Dr. Perez's opinion—which the ALJ considered persuasive—that a walker was medically necessary. But this argument, too, appears to be an improper request to reweigh the evidence. *See id*. The evidence about Gonzalez Castillo's walking abilities was inconsistent, but the ALJ did not focus on only one aspect of the evidence nor disregard contrary evidence. Gonzalez Castillo's own testimony and the disability report indicated that she could walk without an assistive device. Thus, substantial evidence supports the ALJ's finding that Gonzalez Castillo could do sedentary work without a walker.

## CONCLUSION

The Social Security Administration did not err in denying Gonzalez Castillo's claim for supplemental social security income. So we affirm.

**AFFIRMED**.